# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br>Robert R. Doggart<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)　　1:15-mj-83 (UNDER SEAL)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March and April, 2015__ in the county of __Sequatchie__ in the __Eastern__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 373 | Solicitation |
| 18 U.S.C. Section 247 | Intentionally defacing, damaging, or destroying any religious real property, because of the religious character of that property, or attempting to do so |
| 18 U.S.C. Section 875(c) | Transmitting in interstate or foreign commerce any communication containing any threat to injure the person of another |

This criminal complaint is based on these facts:
See attached affidavit of James G. Smith

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James G. Smith, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/10/2015

_____
*Judge's signature*

City and state: Chattanooga, Tennessee

William B. Carter, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, James G. Smith, a Special Agent of the Federal Bureau of Investigation, being sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since 2011. I have investigated federal criminal violations related to violent crime, narcotics, public corruption and terrorism. I have received formal training and have participated in various aspects of investigative matters. As a federal agent, I am authorized to investigate violations of laws of the United States. This affidavit is submitted in support of a complaint and arrest warrant for Robert R. Doggart. This Court, the Honorable Harry S. Mattice, Jr., authorized interceptions of Doggart's cellular telephone on March 15, 2015. This affidavit is based in part upon information received from that wiretap as well as other aspects of the investigation. Affiant seeks an arrest warrant charging Doggart with two charges: 1) solicitation, under Title 18, United States Code, Section 373, to violate the civil rights laws, specifically a violation of Title 18, United States Code, Section 247(a)(1), intentionally defacing, damaging, or destroying any religious real property, because of the religious character of that property, or attempting to do so; and 2) transmitting in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c). The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter.

2. Affiant is aware, from the search of databases and through physical surveillance, that Robert R. Doggart lives in Sequatchie County, Tennessee. Affiant has learned that Doggart

1

associates with various "private militia groups." Affiant is using the term "private militia groups" (or "militias") to designate individuals or groups of individuals who are not linked with officially state or federal government sanctioned organizations or military forces. Affiant has learned through the use of a confidential informant, a review of social media, and other investigative techniques (including the Title III intercepts) that Robert Doggart has made threats regarding individuals in the state of New York. The area Doggart has targeted is near Hancock, New York; it is known as "Islamberg."[1] Doggart threatened to burn a mosque in Islamberg, in addition to other buildings there. Doggart has described his plan to other individuals. Specifically, Affiant is aware that Doggart spoken on the phone with an individual in South Carolina as recently as Thursday, April 9, 2015, regarding the plan to burn down the mosque (and other buildings) at Islamberg.

3. Doggart solicited others to join his plan to attack Islamberg. In a Facebook post, Doggart stated, "The Operation in mind requires but <20 expert Gunners. Target 3 is vulnerable from many approaches, and must be utterly destroyed in order to get the attention of the American People. If you are volunteering, and can show for a face-to-face meeting of these Patriots, then we would welcome your skill set. So, what say you, [name redacted]? 20 Expert Gunners can do a lot [of] damage, both physical and psychological. Forward, please communicate by way of Privacy Message. As we draw nearer to the day, that practice is essential...." Based upon the investigation thus far, affiant believes Doggart identifies "Target 3" as Islamberg. In another Facebook post, Doggart stated, "Our small group will soon be faced with the fight of our lives. We will offer those lives as collateral to prove our commitment to our

---

[1] Affiant believes that "Islamberg" is not a derogatory term. The inhabitants of that community apparently named it themselves.

God. We shall be Warriors who will inflict horrible numbers of casualties upon the enemies of our Nation and World Peace."

4. Prior to the wiretap interceptions, Doggart and a Confidential Source ("CS-1") engaged in consensually recorded phone calls. Doggart solicited the assistance of CS-1 in carrying out his plan. During one of the calls, Doggart stated, in reference to the community members in Islamberg, "those guys [ought or have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." Doggart made this call from the Eastern District of Tennessee. During this call, CS-1 was located in the state of Texas. During some of these phone calls, Doggart discussed travelling to New York to conduct surveillance of the area. That travel to New York has not occurred. However, on April 10, 2015, Doggart informed others that he intended to travel to Hancock, New York on Saturday, April 11, 2015, to conduct a reconnaissance of Islamberg. Doggart has made it clear during previous recorded conversations that the purpose of travelling to Hancock, New York, is to conduct surveillance on Islamberg for the purpose of attacking it and burning the buildings. Doggart repeatedly has stated that the purpose of this initial trip is to conduct surveillance, but in a previously monitored and recorded conversation, Doggart stated to CS-1, "Yeah, I'll probably bring uh, I'll probably bring my M-4 with me just in case. You never know." Affiant is aware that an M-4 is a military style assault rifle. Affiant would note that on April 9, 2015, Doggart stated that he would not be taking weapons with him to New York.

5. Doggart and CS-1 met in Nashville, Tennessee. This meeting occurred on or about Tuesday, March 17, 2015. The meeting was monitored and recorded by agents. Affiant and others observed Doggart at the meeting with CS-1 in Nashville. At the meeting, Doggart told CS-1 that he wanted to make a "Molotov cocktail" to firebomb various buildings at

3

Islamberg, including the mosque, the school and the cafeteria. Doggart had literature, which he left with CS-1, on the Islamberg compound, the gun laws of New York, and maps. During the meeting, Doggart displayed weapons to CS-1, including an M-4. Some of this information is later corroborated by Doggart on phone calls with CS-1 and others.

6. In a call intercepted on March 17 pursuant to the wiretap, Doggart told a female, "When we meet with this state, the people that we seek will know who we are. We will be cruel to them. And we will burn down their buildings," and "[i]f anybody should, if anybody attempts to, uh, harm us in any way; our standoff gunner will take them down from 350 yards away. The standoff gunner would be me." Doggart also stated during this conversation, "We're gonna be carrying an M4 with 500 rounds of ammunition, light armor piercing. A pistol with 3 extra magazines and a machete. And if it gets down to the machete, we will cut them to shreds." Doggart later stated, "I actually think we can get in and out of there, without getting caught. There's only four policemen in town. The fire department is a volunteer department, so it'll take them 35 minutes to get there while that building will be burned down already. And we'll be long gone by then." Doggart explicitly told the female that the plan included burning down a school, a mosque and cafeteria.

7. In an intercepted call on March 22, 2015, Doggart stated:

Hey, um, I appreciate this phone call and I am going to start making these phone calls here, ah, to the rest, to the rest of my, my nine guys and, uh, you know, see if I can't get them committed, find out what their kind of equipment they have on, what their experiences are, what kind of gunners they are, and, ah, you know, what they know about of tactics and all that stuff. If we are going up there to that little Islamberg, we are going to have to burn it down. Uh, I don't want to kill anybody, but if we burn down their, uh, and there's our three targets. There's the kitchen, there's the, uh, the mosque, and uh, and uh, then there of course is ah, their school. If we take out those three components, those three buildings, and we can just walk away. And, we will have taken care of that. Now, you know, if they start laying down fire on us, we are just going to have to take them out.

4

Affiant is aware, based upon physical surveillance of Doggart, that Doggart was located in the Eastern District of Tennessee during this call. Affiant is also aware that the recipient of this phone call was located in South Carolina. The recipient of this call responded by saying, "I have an EOD guy" and then stated, "I don't know if you know what that is but, um, it's demolition." Affiant is aware that EOD is an acronym for "Explosive Ordnance Disposal," and is further aware that various branches of the military have specialties involving EOD. Doggart later responded to the suggestion regarding "an EOD guy," "You know, I don't want to have to throw a gallon of gas in there and you know, burn some kind of thing to light it up and hope it, you know, hope it burns down. We need to know it has to burn down. Demolition guy, ah, yeah, that, that would do it."

8. In another intercepted call on March 26, 2015, between Doggart and the individual in South Carolina, the two discuss politics, then they discuss the plans to travel to Islamberg. The South Carolina individual stated:

> Yeah, the most important thing and it kind of sounds crazy because you know we're going into a combat situation. I always have the same, uh the same concept you know if it's my life it serves a purpose for the better good, I'm willing to give it. But um, I think in a situation like this it's more important to show them that we are above and beyond way better than our enemy. Um, and the goal here is uh not to to to, um, not to get injured. Not to show them that um they have anything on us because they've been training for a long time. But um and they're supposed to be crack troops. If uh, you know, we get in there with a 10 man team and take out a 20-30 man crack troop. Uh that's gonna show them something. Make them think twice about um which town, which country and who the hell they're messing with.

Doggart later responded:

> I want to come back from New York, you know if uh Hancock, New York happens, so be it. And I'll do what I have to do. If there's a gun fight, well there's a gun fight. And I do want to come home 'cause I love my family and I want to see my kids again. But I also understand that if it's necessary to die then that's a good way to die.

9. At the end of the March 26 phone call, the individual in South Carolina stated:

> So, we'll, we'll meet up this weekend and uh, put forth a game plan and just put it in motion, when it gets that, hopefully we'll get the mission to be up there and uh, we'll go up there a couple days ahead of time and set everything up, uh, might not hurt to bring a couple of pigs with us, uh, and play the game.

Doggart responded, "Alright man. Hey, thanks for your time. I'm looking forward to Sunday." Affiant is aware that Doggart went to South Carolina on Sunday, March 29, and stayed until Tuesday, March 31. However, Doggart and the other individual did not meet while Doggart was in South Carolina.

10. In another intercepted call on March 26 (which occurred after the call between Doggart and the individual from South Carolina), Doggart discussed his plans with an individual in Texas who is apparently a militia member or a militia sympathizer. This individual suggested to Doggart that Doggart and his group need to be "reactive," not "preemptive," meaning that Doggart and his group should not carry out their plans until the federal government takes actions which Doggart and the individual in Texas fear it will take. Doggart, near the end of the conversation, agreed that the best strategy might be to wait until the federal government institutes martial law, then strike at Hancock, but concludes the conversation by stating he intends to carry out his plan. Doggart stated,

> Yeah. Yeah, well, I can tell you this, Sunday, this coming Sunday, the decision will be made on the tactics. Then there will be re, further reconnaissance, on this target, at then we will hopefully get some more intelligence on this martial law thing, and I'll have enough information get to you, you know, to give the order and then once the order is given, uh, the ten of us, a small group, but we are again, I remind you, master gunners, and our ratio, that I expect, casualty ratio, it's 30 to 1. It's gonna take 30 people to get me and everybody else in my unit. So, anyway, those things are gonna happen. So, Sunday's a big day, uh, we're having a meeting in another state, move it around, okay, uh and then we'll wait on, on, what happens in Texas, and the intelligence as it comes in. I don't really want to take a preemptive strike, I think you're right. I think it's better to wait, as soon as the thing in Texas and Utah happens, then you hit it, right then. Right then,

because it will divert the entire federal government into, "hey, we got a problem in this other state, you know, 1200 miles away and uh oh, there's another one all the way across the country, so, that's the stuff we're dealing with. And you know, history will show, as you just mentioned history, history will show maybe uh, the truth, but maybe not, but history is usually a group of lies agreed upon, by the winners and by the historians who will tell their story. And, you know, you and I can do whatever we want and be hero's or not, uh, but somebody will tell our story. But we're still going to do this thing.

Affiant is aware, based upon subsequent intercepted telephone calls, Doggart has suggested that waiting until martial law is imposed before he strikes Islamberg is one option (the "reactive" approach). However, Doggart has also suggested that he is contemplating the other approach: striking Islamberg before the government institutes martial law.

11. In an intercepted call on March 28, Doggart left this voicemail: "The plan is still the same. I'm going to South Carolina tomorrow to meet with the guys there in the South Carolina Militia and talk to their demolition expert and their uh, I guess their commander and tell 'em we're gonna need two or three guys."

12. In an intercepted call on April 2, 2105, Doggart stated to another individual, "I've got this battalion that I command and they want to go up to uh a place and take action. There is all these people all over the country that want to start what we call a flash point. A flash point is (UI) so sick and tired of the crap that the government is pulling that we go take a small military installation or we go burn down a Muslim church or something like that. Something."

13. On April 9, 2015, affiant is aware that Doggart met in person with other individuals in Chattanooga, Tennessee. This meeting was recorded and monitored. During this conversation Doggart stated that he would be travelling to Hancock, New York, on Saturday (April 11) to conduct recon. Also, a call between Doggart and the aforementioned individual in South Carolina was intercepted later on April 9. During the call, Doggart stated that he would be travelling by himself to Hancock, New York, to conduct surveillance. Doggart claimed that the

7

two needed to be careful when speaking on the phone about "the plan." Doggart asked the individual if he still had his "other specialist fellow" who had materials to make "fireworks." The individual replied in the affirmative.

14. Affiant is aware that a charge involving 18 U.S.C. Section 247 requires approval by "certification in writing of the Attorney General or his designee that in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice." The signed certification pertaining to Doggart is attached herein.

## CONCLUSION

15. Affiant submits based upon these facts, there is probable cause to believe that in March, 2015, in the Eastern District of Tennessee and elsewhere, Robert R. Doggart did solicit others to violate the civil rights laws, specifically a violation of Title 18, United States Code, Section 247(a)(1), intentionally defacing, damaging, or destroying any religious real property, because of the religious character of that property, or attempting to do so; and 2) transmit in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c). Affiant also requests that due to the nature of the investigation, this affidavit and the attached complaint and warrant be sealed until further Order of the Court.

James G. Smith,
Special Agent, FBI

William B. Carter
United States Magistrate Judge