UNITED STATES DISTRICT COURT
EASTERN DISTRICT of TENNESSEE
at CHATTANOOGA


FILED
APR 2 2015
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

UNITED STATES OF AMERICA )
)
v. )
)
ROBERT R. DOGGART )
)

1:15-cr-39

Judge Collier
Magistrate Judge Lee

## PLEA AGREEMENT

The United States of America by and through William C. Killian, United States Attorney for the Eastern District of Tennessee, Perry H. Piper, Assistant United States Attorney, Saeed A. Mody, Trial Attorney for the U.S. Department of Justice, Civil Rights Division, and Robert R. Doggart, the defendant, and Bryan Hoss, the defendant's attorney, have agreed upon the following:

1. The defendant will waive Indictment and arraignment and plead guilty to a one count Bill of Information charging the defendant with Interstate Communication of Threats in violation of 18 U.S.C. Section 875(c). The punishment for this offense is as follows: a maximum penalty of up to five years imprisonment; a fine of not more than $250,000; a term of supervised release of not more than three years; any lawful restitution; and a special assessment of $100.

2. There will be no other counts to dismiss at the time of sentencing.

3. The defendant has read the Information and discussed the charges and possible defenses with defense counsel, and the defendant understands the crimes charged. Specifically, the elements of this offense are as follows: Interstate Communication of Threats, 18 U.S.C. § 875(c):

a)   The defendant knowingly sent a message in interstate commerce;

b)   Containing a true threat to injure the person of another.

4.   In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

In or about February, 2015, agents with the Federal Bureau of Investigation became aware that the defendant was communicating threats concerning an area located outside of Hancock, New York, and the individuals that lived in a community there. This area is known as "Islamberg," a self-named community consisting primarily of individuals of the Islamic faith. Specifically, in a Facebook posting in February 2015, the defendant wrote that "Target 3 [Islamberg] is vulnerable from many approaches and must be utterly destroyed..." The defendant spoke with numerous other individuals (in person and over his cellular telephone) regarding his plan to attack Islamberg. The defendant justified his attack on Islamberg by claiming that the residents of Islamberg were planning a terrorist attack. The defendant stated on cellular phone communications that he planned to burn three buildings at Islamberg: a mosque, a school, and a cafeteria. The defendant was fully aware of the religious character of the mosque when he identified it as one of the buildings that needed to be burned. Additionally, the defendant suggested on a cellular telephone call that he and his group would kill some residents of Islamberg in order to carry out the plan.

On or about March 6, 2015, the defendant used a cellular phone to call a cooperating source ("CS") with the FBI. At the time of the call, the defendant was located in Sequatchie

County, Tennessee (which is within the Eastern District of Tennessee). The CS was located in El Paso, Texas at the time of the call. The defendant made clear his ultimate plan was to injure or kill the inhabitants of Islamberg in Hancock, New York. During the phone call, the defendant told the CS, "those guys [have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." In the same recorded call, the defendant informed the CS that they could not carry pistols from Tennessee to New York because New York does not have carry permit reciprocity, but they could bring their "AR-15s, M-4s or M-16s." The defendant, in the recorded call, informed the CS that he planned to bring his M-4 rifle with four magazines. The defendant then told the CS he could provide the CS with the "meanest shotgun on Earth." When discussing the schedule for the operation, the defendant told the CS that "the drop dead date is April 15 because that's when those guys in OAF say they're gonna start a civil war." OAF is a militia organization with which the defendant had been in contact.

The defendant took numerous steps in furtherance of the threats that he communicated, many of which were discovered by the FBI through its use of wiretap issued pursuant to Title III, and other investigative techniques. At various points during the investigation, the defendant traveled to other locations to meet with individuals the defendant believed would assist him with his plan. The defendant traveled to Nashville, Tennessee, on March 17, 2015, and met with the CS. At that time, the defendant showed to the CS a map of Islamberg. On that map the defendant identified the buildings he intended to destroy. Also, the defendant carried firearms with him to Nashville, including an M-4 type weapon as well as a shotgun. Furthermore, the defendant traveled to Greenville, South Carolina, in order to meet with another individual the defendant believed was interested in assisting him. Even though this individual and the

Page 3 of 9
Case 1:15-cr-00039-CLC-SKL Document 14 Filed 04/29/15 Page 3 of 9 PageID #: 47

defendant did not meet, the defendant spoke with this individual on his celluar telephone and discussed the burning of the buildings, including the mosque, and other topics. These calls were intercepted pursuant to the Court's authorized wiretap interception. In other intercepted phone calls, the defendant stated that his "M-4" was "battle tested" at 350 meters, that he would serve as the stand-off gunner during the assault, and that he would shoot the residents of Islamberg during the attack. The defendant also solicited the help of other "gunners" via Facebook. The investigation of the defendant's threatening communications required significant resources and time by the FBI in both Tennessee and South Carolina.

As part of this plea agreement, the defendant admits that he willfully and knowingly sent a message in interstate commerce containing a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c). Many of the acts listed above occurred in the Eastern District of Tennessee.

5. The defendant is pleading guilty because he—the defendant—is in fact guilty. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

> a) the right to be indicted by a grand jury;
> b) the right to plead not guilty;
> c) the right to a speedy and public trial by jury;
> d) the right to assistance of counsel at trial;
> e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;
> f) the right to confront and cross-examine witnesses against the defendant;
> g) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and
> h) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a. The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

    b. The Court will impose special assessment fees as required by law; and

    c. The Court may order forfeiture as applicable and restitution as appropriate.

No representative of the United States has made any promises to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and the defendant may not use these estimates or predictions as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the Court will determine the sentence in this case after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the Court awards the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting

responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offenses prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.

In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held

by a spouse, nominee, or other third party. In furtherance of this plea agreement, the defendant additionally agrees to the following specific terms and conditions:

      a.      If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b.      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c.      If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.      There are no waiver of appellate or § 2255 rights in this plea agreement.

11.      This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this plea agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the plea agreement and may also enforce whatever parts of the plea agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that the United States dismissed and any other charges that the

United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution, including the right to be indicted within the time frame specified within 18 U.S.C. Section 3161. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this plea agreement, are null and void.

WILLIAM C. KILLIAN
United States Attorney

_4/27/15_  By: _/s/ Perry H. Piper_
Date  Perry H. Piper
 Assistant United States Attorney

_4/27/15_  By: _/s/ Saeed A. Mody_
Date  Saeed A. Mody
 Trial Attorney
 Civil Rights Division

_24 APR 2015_  _/s/ Robert R. Doggart_
Date  Robert R. Doggart
 Defendant

_4/24/15_  _/s/ Bryan Hoss_
Date  Bryan Hoss
 Attorney for the Defendant