UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | 1:15-cr-39 |
| vs. | ) | |
| | ) | Judge Collier/Lee |
| | ) | |
| ROBERT R. DOGGART | ) | |

GOVERNMENT'S MOTION FOR STAY AND REVOCATION OF RELEASE ORDER

Comes now the United States of America by and through United States Attorney William C. Killian for the Eastern District of Tennessee, and Assistant United States Attorney Perry H. Piper, and moves for a stay and revocation of a release order for the defendant issued by United States Magistrate Judge Susan K. Lee on May 6, 2015. As grounds therefore, the United States submits the following:

On April 24, 2015, the defendant, Robert R. Doggart, was charged in a one-count information with transmitting in interstate commerce a threat or communication to injure others, in violation of 18 U.S.C. § 875(c). The defendant has also signed a plea agreement in which he admits his guilt of this offense. Specifically, in the plea agreement (which defendant and his counsel have signed), the defendant admitted the following:

> In or about February, 2015, agents with the Federal Bureau of Investigation became aware that the defendant was communicating threats concerning an area located outside of Hancock, New York, and the individuals that lived in a community there. This area is known as "Islamberg," a self-named community consisting primarily of individuals of the Islamic faith. Specifically, in a Facebook posting in February 2015, the defendant wrote that "Target 3 [Islamberg] is vulnerable from many approaches and must be utterly destroyed…" The defendant spoke with numerous other individuals (in person and over his cellular telephone) regarding his plan to attack Islamberg. The

1

defendant justified his attack on Islamberg by claiming that the residents of Islamberg were planning a terrorist attack. The defendant stated on cellular phone communications that he planned to burn three buildings at Islamberg: a mosque, a school, and a cafeteria. The defendant was fully aware of the religious character of the mosque when he identified it as one of the buildings that needed to be burned. Additionally, the defendant suggested on a cellular telephone call that he and his group would kill some residents of Islamberg in order to carry out the plan.

On or about March 6, 2015, the defendant used a cellular phone to call a cooperating source ("CS") with the FBI. At the time of the call, the defendant was located in Sequatchie County, Tennessee (which is within the Eastern District of Tennessee). The CS was located in El Paso, Texas at the time of the call. The defendant made clear his ultimate plan was to injure or kill the inhabitants of Islamberg in Hancock, New York. During the phone call, the defendant told the CS, "those guys [have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." In the same recorded call, the defendant informed the CS that they could not carry pistols from Tennessee to New York because New York does not have carry permit reciprocity, but they could bring their "AR-15s, M-4s or M-16s." The defendant, in the recorded call, informed the CS that he planned to bring his M-4 rifle with four magazines. The defendant then told the CS he could provide the CS with the "meanest shotgun on Earth." When discussing the schedule for the operation, the defendant told the CS that "the drop dead date is April 15 because that's when those guys in OAF say they're gonna start a civil war." OAF is a militia organization with which the defendant had been in contact.

The defendant took numerous steps in furtherance of the threats that he communicated, many of which were discovered by the FBI through its use of wiretap issued pursuant to Title III, and other investigative techniques. At various points during the investigation, the defendant traveled to other locations to meet with individuals the defendant believed would assist him with his plan. The defendant traveled to Nashville, Tennessee, on March 17, 2015, and met with the CS. At that time, the defendant showed to the CS a map of Islamberg. On that map the defendant identified the buildings he intended to destroy. Also, the defendant carried firearms with him to Nashville, including an M-4 type weapon as well as a shotgun. Furthermore, the defendant traveled to Greenville, South Carolina, in order to meet with another individual the defendant believed was interested in assisting him. Even though this individual and the defendant did not meet, the defendant spoke with this individual on his celluar telephone and discussed the burning of the buildings, including the mosque, and other topics. These calls were intercepted pursuant to the Court's authorized wiretap interception. In other intercepted phone calls, the defendant stated that his "M-4" was "battle tested" at 350 meters, that he would serve as the stand-off gunner during the assault, and that he would shoot the residents of Islamberg during the attack. The defendant also solicited the help of other "gunners" via

2

Facebook. The investigation of the defendant's threatening communications required significant resources and time by the FBI in both Tennessee and South Carolina.

As part of this plea agreement, the defendant admits that he willfully and knowingly sent a message in interstate commerce containing a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c). Many of the acts listed above occurred in the Eastern District of Tennessee.

After submission of the plea agreement and the bill of information, this Court entered an order requiring the parties to address the issue of whether the "factual basis in the proposed plea agreement contains communication on Defendant's part amounting to a 'true threat' as required under 18 U.S.C. § 875(c)." (R. 16, Order, PageID# 57.) The United States anticipates that it will file a response to the Court's order on or before May 19, 2015.

In the event of conviction, the defendant is facing a sentence of up to five years imprisonment, a fine of up to $250,000 and a term of supervised release for not more than three years.

The defendant was originally arrested on a criminal complaint, which included the aforementioned charge as well as the charge of solicitation to commit a civil rights violation pursuant to 18 U.S.C. § 373 and 18 U.S.C. § 247. The defendant was originally arrested on Friday, April 10, 2015. His initial appearance was scheduled for Monday, April 13, 2015. At that time, the parties requested, and the Court agreed, to hold the preliminary hearing and detention hearing on Monday, April 20, 2015. On that day, Monday, April 20, 2015, after the United States moved for pretrial detention of the defendant pursuant to 18 U.S.C. § 3142, the defendant appeared before Magistrate Judge Lee and was detained. During the hearing the government presented proof of the defendant's threats, and related activities, through FBI Special Agent James Smith. Agent Smith testified at length. He recounted the facts set forth

above (which are contained in the plea agreement) and also provided much other information regarding the defendant's actions. After the hearing, the defendant waived argument regarding probable cause.  After argument regarding detention, the Court ordered the defendant be detained.   In the Court's detention order, the Court stated:

> I find clear and convincing evidence the defendant is a danger to the community and by the preponderance of the evidence that defendant is a risk of non-appearance. Based on the continuing nature of the offenses shown by proof and the evidence of undefined and potentially disabling mental health issues, and evidence of substance abuse issues, I conclude the defendant is a danger to the community and a risk of non-appearance and that there are no conditions or combinations of conditions that can assure defendant's appearance or the safety of any other person and the community at this time. Defendant must therefore be detained without bail.

(R. 9, Order of Detention, PageID# 38.)

Since that hearing the defendant has agreed to plead guilty pursuant to a bill of information charging one count of Interstate Communication of Threats under 18 U.S.C. § 875(c).   The defendant has evidenced his intent to plead guilty to the bill of information and has agreed (based upon his signature) to the factual basis contained in the plea agreement and recounted above.

On Wednesday, May 6, 2015, the defendant again appeared before Magistrate Judge Lee, who *sua sponte* renewed the detention issue.  After hearing an offer of proof from defense counsel regarding the defendant's mental health situation, the Court ordered the defendant's release on conditions.  Defendant, through counsel, stated that the defendant had weaned himself from his prescription pain medication and was no longer consuming alcohol (the defendant obviously did not have access to alcohol in the Hamilton County Jail).  Furthermore, the defendant presented some proof that he had previously been awarded Social Security

4

Disability benefits based upon a combination of physical and mental health problems. Defense counsel informed the Court that the defendant had been examined by his own psychologist who allegedly determined that the defendant was not a present danger to himself. The psychologist could not make the same assurance with regard to the danger posed by the defendant to others (the evaluation was performed only one day before the hearing). The government objected to the defendant's release, arguing that the defendant was a danger to the community and that no conditions, or combination of conditions, could be imposed which would reasonably assure the safety of the community.

The Court premised its detention on three prongs: (1) the continuing nature of the offenses, (2) the evidence of undefined and potentially disabling mental health issues, and (3) evidence of substance abuse issues.

The first two areas of concern listed by the Court are still present. Releasing the defendant does not mitigate the "continuing nature of the offenses," and the proffer of the defendant at the May 6 hearing established that the defendant may indeed have mental health issues (based upon a preliminary evaluation performed by a psychologist retained by the defendant). The only proof offered by the defendant was that he was not "a danger to himself." Specifically, counsel for the defendant could not represent that he was not a "danger to others." Of course, the defendant's substance abuse issues were abated by some degree due to the defendant's incarceration as the defendant had been incarcerated for approximately the past 25 days. In addition, those who know the defendant best, his own family members, have expressed concern regarding defendant's mental state and presumably his dangerousness to others.

5

A threat in violation of 18 U.S.C. § 875(c) constitutes a "crime of violence," warranting detention under the Bail Reform Act. *United States v. Choudhry*, 941 F.Supp.2d 347, 351 (E.D.N.Y. 2013) (citing *United States v. Dillard*, 214 F.3d 88, 97 (2d Cir. 2000)).

Pursuant to 18 U.S.C. 3145, the government files this motion for revocation of Magistrate Judge Lee's order to release the defendant, Robert Doggart, in the above-captioned case. Section 3145 provides, "[i]f a person is ordered released by a magistrate judge….(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order…." The United States also asks this Court to stay the release order issued by Magistrate Judge Lee pending review of the issue of detention by this Court. (The government asked the Court to stay its order of release pending appeal to this Court. The Magistrate Judge denied that request.) The government respectfully requests a *de novo* review of the Magistrate Court's Order authorizing release. *See, United States v. Hernandez,* 2002 WL 1377911, *1 (E.D. Tenn. 2002); *United States v. Yamini*, 91 F.Supp.2d 1125, 1130 (S.D. OHIO 2000) (court concludes that *de novo* review of Magistrate Judge's detention order is the appropriate standard of review).

Respectfully submitted,

WILLIAM C. KILLIAN
United States Attorney

By: s/ Perry H. Piper
Perry H. Piper
Assistant United States Attorney

CERTIFICATE OF SERVICE

       I hereby certify that on May 6, 2015, this motion was filed electronically, and notice of its filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Any parties not listed as being served by the Court's filing system will be served by regular United States mail, postage prepaid.

                                        s/ Perry H. Piper
                                        Perry H. Piper
                                        Assistant United States Attorney