UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:15-CR-39 |
| v. ) | |
| ) | |
| ROBERT R. DOGGART ) | Judge Curtis L. Collier |
| ) | |

## **MEMORANDUM & ORDER**

Before the Court is the Government's motion for revocation of the release order for Defendant Robert R. Doggart ("Defendant") (Court File No. 18). Defendant was originally indicted on one count of transmitting in interstate commerce a threat or communication to injure others, in violation of 18 U.S.C. § 875(c) and one count of solicitation to commit a civil rights violation pursuant to 18 U.S.C. § 373 and 18 U.S.C. § 247. Magistrate Judge Susan K. Lee ordered Defendant detained pending trial, noting the "continuing nature of the offenses shown by proof and the evidence of undefined and potentially disabling mental health issues, and evidence of substance abuse issues" (Court File No. 9). The Government subsequently filed an information charging Defendant only with the § 875(c) offense (Court File No. 12), for which the parties filed a proposed plea agreement (Court File No. 14).[1] The proposed plea agreement stated in part the following:

> In or about February, 2015, agents with the Federal Bureau of Investigation became aware that the defendant was communicating threats concerning an area located outside of Hancock, New York, and the individuals that lived in a community there. This area is known as "Islamberg," a self-named community consisting primarily of individuals of the Islamic faith. Specifically, in

---

[1] This Court has ordered the parties to address whether the factual basis in the proposed plea agreement contained communication on Defendant's part amounting to a 'true threat' as required under 18 U.S.C. § 875(c) (Court File No. 16).

a Facebook posting in February 2015, the defendant wrote that "Target 3 [Islamberg] is vulnerable from many approaches and must be utterly destroyed…" The defendant spoke with numerous other individuals (in person and over his cellular telephone) regarding his plan to attack Islamberg. The defendant justified his attack on Islamberg by claiming that the residents of Islamberg were planning a terrorist attack. The defendant stated on cellular phone communications that he planned to burn three buildings at Islamberg: a mosque, a school, and a cafeteria. The defendant was fully aware of the religious character of the mosque when he identified it as one of the buildings that needed to be burned. Additionally, the defendant suggested on a cellular telephone call that he and his group would kill some residents of Islamberg in order to carry out the plan.

On or about March 6, 2015, the defendant used a cellular phone to call a cooperating source ("CS") with the FBI. At the time of the call, the defendant was located in Sequatchie County, Tennessee (which is within the Eastern District of Tennessee). The CS was located in El Paso, Texas at the time of the call. The defendant made clear his ultimate plan was to injure or kill the inhabitants of Islamberg in Hancock, New York. During the phone call, the defendant told the CS, "those guys [have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." In the same recorded call, the defendant informed the CS that they could not carry pistols from Tennessee to New York because New York does not have carry permit reciprocity, but they could bring their "AR-15s, M-4s or M-16s." The defendant, in the recorded call, informed the CS that he planned to bring his M-4 rifle with four magazines. The defendant then told the CS he could provide the CS with the "meanest shotgun on Earth." When discussing the schedule for the operation, the defendant told the CS that "the drop dead date is April 15 because that's when those guys in OAF say they're gonna start a civil war." OAF is a militia organization with which the defendant had been in contact.

The defendant took numerous steps in furtherance of the threats that he communicated, many of which were discovered by the FBI through its use of wiretap issued pursuant to Title III, and other investigative techniques. At various points during the investigation, the defendant traveled to other locations to meet with individuals the defendant believed would assist him with his plan. The defendant traveled to Nashville, Tennessee, on March 17, 2015, and met with the CS. At that time, the defendant showed to the CS a map of Islamberg. On that map the defendant identified the buildings he intended to destroy. Also, the defendant carried firearms with him to Nashville, including an M-4 type weapon as well as a shotgun. Furthermore, the defendant traveled to Greenville, South Carolina, in order to meet with another individual the defendant believed was interested in assisting him. Even though this individual and the defendant did not meet, the defendant spoke with this individual on his cellular telephone and discussed the burning of the buildings, including the mosque, and other topics. These calls were intercepted pursuant to the Court's authorized wiretap interception. In other intercepted phone calls, the defendant stated that his "M-4"

2

was "battle tested" at 350 meters, that he would serve as the stand-off gunner during the assault, and that he would shoot the residents of Islamberg during the attack. The defendant also solicited the help of other "gunners" via Facebook. The investigation of the defendant's threatening communications required significant resources and time by the FBI in both Tennessee and South Carolina.

As part of this plea agreement, the defendant admits that he willfully and knowingly sent a message in interstate commerce containing a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c). Many of the acts listed above occurred in the Eastern District of Tennessee.

The Magistrate Judge then held a second preliminary hearing where she considered bail and took additional evidence, including evidence regarding Defendant's mental health and sobriety. Social Security documentation showed Defendant had depression and an unspecified personality disorder. Defendant's counsel informed the Magistrate Judge that a psychologist, who evaluated Defendant the day before the hearing, stated that Defendant did not pose a risk of harm to himself, although she was not able to determine whether or not he might pose a risk of harm to others. It is undisputed that Defendant is no longer using illegal drugs or alcohol. The Magistrate Judge found there were conditions which would reasonably assure Defendant's appearance and the safety of the community and ordered Defendant released once location monitoring could be set up. Specifically, the conditions of release include, among numerous standard conditions, that Defendant be released into the custody of two named family members; undergo psychiatric treatment; refrain from any use of alcohol or illegal drugs; participate in a program of substance abuse treatment if directed by his probation officer; remain under home detention; submit to location monitoring; and have no internet access. The Government objects to the Magistrate Judge's release determination.

The Bail Reform Act directs a judicial officer to order the pretrial release of a person charged with an offense on personal recognizance or upon the execution of an unsecured

3

appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the preceding terms will not reasonably assure appearance or will endanger safety, then the judicial officer is directed to consider a number of conditions to be attached to a release order. 18 U.S.C. § 3142(c). A defendant may be detained pending trial only upon certain findings made after a detention hearing, specifically that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community, the judicial officer considers the following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including–
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A district court should review a magistrate's decision considering the factors set out in § 3142(g), but a full evidentiary hearing is not required. *United States v. Webb*, 238 F.3d 426, 2000 WL 1721060, *2 (6th Cir. Nov. 6, 2000) (unpublished table opinion). The district court

4

makes its own *de novo* determination of the facts, but *de novo* review does not require a *de novo* evidentiary hearing. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991); *United States v. Koening*, 912 F.2d 1190, 1193 (9th Cir. 1990); *United States v. Ruiz-Corral*, 338 F. Supp. 2d 1195, 1196 (D. Colo. 2004); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *United States v. Hammond*, 204 F. Supp. 2d 1157, 1162 (E.D. Wis. 2002); *United States v. Kyle*, 49 F. Supp. 2d 526, 527 (W.D. Tex. 1999).

The Government argues that the concerns over continuing conduct and mental health issues are still present and that Defendant poses a danger to the community that cannot be alleviated by special conditions of release. However, the Court notes that additional evidence adduced during the most recent hearing tended to show that Defendant's mental health problems may not pose as significant of a risk as originally worried. Additionally, although there may be some concern about future conduct related to the plans discussed in the plea agreement, the Government does not explain why the extensive conditions of release imposed by the Magistrate Judge do not address Defendant's danger to the public. Specifically, because the chief concern is that Defendant may want to travel to New York to inflict harm on people or destroy buildings, the home detention and location monitoring, along with being in the custody of family members, should go a significant way toward ensuring Defendant does not pose a danger. While there is certainly cause for concern and good reason for imposition of the numerous conditions, the Court concludes that the Government has not shown by clear and convincing evidence Defendant's release would pose an unreasonable danger to the community or any particular individual. Thus, after having reviewed the evidence and arguments, the Court concludes the Government has not met its burden and the combination of conditions imposed by Magistrate

5

Lee will reasonably assure avoiding the type of incident the Government fears.  Accordingly, the Court hereby **DENIES** the Government's motion (Court File No. 18)

    **SO ORDERED.**

    **ENTER:**

    **/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**