UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cr-39-CLC-SKL-1 |
| | ) | |
| ROBERT R. DOGGART | ) | |
| | ) | |
| | ) | |

# REPORT & RECOMMENDATION

Before the Court are two allied motions to suppress, with supporting memorandum, filed by Defendant Robert R. Doggart ("Defendant" or "Doggart") [Docs. 98, 100, 115 & 116]. In the first motion, Defendant seeks to suppress all evidence obtained as a result of a wiretap authorized by this Court pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III"). Defendant claims suppression of all evidence from the wiretap (and its fruit) is required because the affidavit of Federal Bureau of Investigation ("FBI") Special Agent James G. Smith ("SA Smith") [Doc. 100-1 ("Wiretap Affidavit")] and the application for the wiretap [Doc. 100-2 ("Wiretap Application")] do not establish probable cause for authorization of the wiretap [Doc. 100-3]. In the second motion, Defendant seeks to suppress all evidence from the search of Defendant's residence, vehicles, and computer on the basis that SA Smith's supporting affidavit [Doc. 116-1 ("Search Affidavit")], absent the wiretap interception information, fails to establish probable cause for authorization of the search warrant issued by this Court.

The United States of America ("Government") filed a response in opposition to each motion. With respect to the first motion, the Government argues the Wiretap Affidavit provides abundant probable cause. With respect to the second motion, the Government argues that even

if the wiretap materials were to be excluded from the probable cause analysis, the Search Affidavit would still provide ample probable cause for issuance of the search warrant and/or the good faith exception would apply to prevent suppression [Docs. 108 & 123].

Defendant filed a reply brief on both motions [Docs. 119 & 129] and both motions are now ripe. I **RECOMMEND** that Defendant's motions to suppress be **DENIED** for the reasons stated below.[1]

## I. BACKGROUND

This case was initiated by a Complaint filed on April 13, 2015 [Doc. 1]. The Complaint charged Defendant with transmitting, in interstate commerce, a threat or communication to injure others in violation of 18 U.S.C. § 875(c) and solicitation to commit a civil rights violation under 18 U.S.C. §§ 373 & 247. The Government subsequently filed a Bill of Information charging Defendant with only the § 875(c) offense [Doc. 12] and the parties proposed a plea agreement with respect to the single § 875(c) charge in the Information. The Court, however, found the proposed plea agreement did not contain a sufficient factual basis to support a § 875(c) conviction [Doc. 29].

After the Court rejected the proposed plea agreement, the grand jury returned a one-count Indictment against Defendant charging him with solicitation to commit a civil rights violation pursuant to 18 U.S.C. §§ 373 & 247 on July 7, 2015 [Doc. 37]. On May 3, 2016, a four-count Superseding Indictment was returned against Defendant alleging solicitation to commit a civil rights violation and solicitation to commit arson of a building pursuant to 18 U.S.C. §§ 373 & 247, plus communicating threats on two different dates in interstate commerce in violation of 18 U.S.C. § 844(e)[Doc. 84].

---

[1] The motions to suppress were referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) by standing order. The Government has not challenged Defendant's reasonable expectation of privacy or "standing" to pursue the motions.

### A. The Wiretap Affidavit

On March 15, 2015, the Honorable Harry S. Mattice, Jr. authorized the interception and monitoring of wire communications of a target telephone belonging to Defendant ("TT-1"). The monitoring reportedly began the same day and ended on April 10, 2015. Calls between Defendant and others were monitored and recorded.

The Wiretap Application sought authorization to intercept the wire communications of Defendant and other named interceptees for TT-1. In the Wiretap Application, the Government stated it was seeking authorization to intercept the wire communications concerning the following enumerated 18 U.S.C. § 2516 offenses:

> (a) using the telephone or other instrument of interstate or foreign commerce, willfully making any threat….concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive under 18 U.S.C. § 844(e);
> (b) possessing a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c).

[Doc. 100-2 at Page ID # 584]. Immediately following the above itemization, the Government stated:

> Other offenses for which there is probable cause to believe that the named interceptees are committing, and are related to the investigation, are:
> (c) Conspiracy to injure, oppress, threaten, or intimidate any person in connection with exercising their constitutional rights under 18 U.S.C. § 241;
> (d) willfully causing bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, [or] attempting to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person under 18 U.S.C. § 249;
> (e) aiding and abetting the aforementioned crimes, in violation of Title 18, United States Code, Section 2; and
> (f) transmitting in interstate or foreign commerce any communication containing any threat to kidnap any person or any

> threat to injure the person of another, in violation of Title 18, United
> States Code, Section 875(c).

[*Id*. at Page ID # 585]. At the end of subparagraph (f), the Government inserted a footnote stating:

> Applicant is aware that the only crimes listed in this application, and the affidavit, which are enumerated in 18 U.S.C. § 2516 are violations of Title 18, U.S.C. §§ 844(e) and 924(c). However, two of the other crimes listed, 18 U.S.C. §§ 241 and 249 form the basis for the underlying crime of violence to which the 924(c) charge is attached. Accordingly, affiant has listed all of the crimes for which law enforcement officers believe there is probable cause a federal criminal offense has been committed.

[*Id*. at Page ID # 585].

In the Wiretap Affidavit, SA Smith recites his employment with the FBI since 2011 and that he has experience investigating violent crimes, including terrorism [Doc. 100-1 at Page ID # 558-59, ¶¶ 1 & 2]. SA Smith avers that while he has other knowledge not set forth in the Wiretap Affidavit, it contains facts to demonstrate "probable cause to believe that violations of Title 18 U.S.C. § 241, 249, 844(e), 875(c), and 924(c), are in the planning stages and will be committed by the user of [TT-1, Defendant]." [I*d*. at Page ID # 559, ¶ 3]. SA Smith further opines that Defendant and others "have committed, are committing, and are planning to commit" the offense listed above and again includes a footnote stating that only § 924(c) and 844(e) are predicate offenses for interception under Title III and the other crimes are listed because "they serve as either underlying crimes of violence for 18 U.S.C. [§] 924(c) or are integrally associated with this criminal activity." [*id*. at Page ID # 559-60, ¶ 4 & n.1].

SA Smith avers that he learned through the use of a confidential informant, a review of social media, and other investigative techniques that Defendant "has made threats regarding individuals of the Islamic faith in the state of New York." [*id*. at Page ID # 560, ¶ 5]. The Wiretap Affidavit sets forth law enforcement's reliance on information supplied by a known, paid, "proven reliable," confidential source ("CS-1") located in Texas who brought Defendant, believed to be located in

Tennessee, to the attention of law enforcement [*id*. at Page ID # 563-64, 569, ¶¶ 9,10, & 19]. SA Smith affirms his belief that "all information furnished by CS-1 used in this [A]ffidavit has proven to be true, accurate and reliable" and "[m]uch of the information [provided by CS-1] has been independently corroborated by law enforcement officers." [*Id*. at Page ID # 563, ¶ 9].

As set forth in the Wiretap Affidavit, SA Smith was aware of calls in February and March, 2015 between CS-1 and Defendant and that Defendant was planning a trip to Hancock, New York, to conduct surveillance of an area known as Islamberg [*id*. at Page ID # 563, 566 ¶¶ 9 & 14]. CS-1's initial telephone contacts with Defendant were unmonitored but the Wiretap Affidavit also included information about monitored calls, including calls on March 6, 12, and 13, 2015 [*id*. at Page ID # 564-69, ¶¶ 11, & 13-18]. In addition, the Wiretap Affidavit quotes three social media postings by Defendant and SA Smith opines with respect to one such posting that it "is an attempt by Doggart to recruit others for his plan to inflict casualties on Muslims." [*Id*. at at Page ID # 565, ¶ 12].

The Wiretap Affidavit describes the contents of several of the monitored calls between the CS-1 and Defendant. In a monitored call on March 6, 2015, Defendant and CS-1 discussed the possibility of meeting with local politicians and law enforcement during the trip to New York and SA Smith opined Defendant made clear the real "purpose of this travel was purportedly to conduct surveillance on a compound . . . which Doggart believes is a 'Muslim training camp" and that Defendant's "ultimate plan was to injure or kill Muslims." [*Id*. at Page ID # 564-69, ¶¶ 11, & 13-18]. Defendant also told CS-1 that although there was no gun carry permit reciprocity between Tennessee and New York so they could not take pistols to New York, they could bring other guns. Defendant said he planned to bring his M4, which SA Smith averred was a military style assault rifle, and four magazines [*id.*]. Defendant offered to provide the "meanest shotgun on Earth" to CS-1 for the trip [*id*].

The Wiretap Affidavit sets forth that during the monitored March 12 and 13 communications, Defendant told CS-1 the surveillance was to take place "next week" and they planned to meet in Nashville and drive to New York [*id.* at Page ID # 567]. The Wiretap Affidavit recounts:

> 15. On March 12, 2015, CS-1 spoke to Doggart on TT-1. During this conversation, Doggart stated "Yeah, uh, I think we ought to do this thing next week, and, uh, I'm not sure we need three, uh, cause we can't, I don't think we should go to, to the mayor, or to the police, you know, with three guys standing there." Doggart then continues, "two is plenty. And, uh, you know, then if they want to go with us to look around, that's fine and then we'll go reconnoiter the place and see what's going on." Based upon the affiant's training and experience, and the investigation thus far, affiant believes that Doggart is informing CS-1 that Doggart, and others, are going to meet with public officials and discuss the alleged threat that the Muslims present. Affiant believes that after meeting, Doggart and others are going to conduct surveillance (or recon) of the area. CS-1 then stated, "Okay, so we are gonna go do the uh, uh, surveillance, just go look around," to which Doggart replies, "Yes, yes."
>
> 16. Later in the same conversation, Doggart states, "[w]e can talk about stuff on the way, our plans, you know, weapons and what kind of equipment we're gonna need and all that stuff. So, that's it. Um, I'm gonna try and confirm it tomorrow. But, uh, you know, one thing again, I think we've talked about it every time, is everybody's got to understand, you know, when we do this thing, there's no pulling back. You know, we, once we commit to it we have to [be][sic] able to go in there and get our mind set, uh, and prepare to, to fire weapons. I mean, that's a big deal." Based upon the investigation, affiant believes that Doggart is informing CS-1 that after the surveillance or recon, Doggart and his group are going to employ violence against Muslims in the Hancock, New York, area. Affiant believes that the plan may be to conduct surveillance, leave New York, return to Tennessee, then arrange for another trip to New York to carry out their plan. Shortly later in the conversation, CS-1 asked Doggart about his plans. Doggart replied, "Well, yeah, let's see what we, let's see what we find next week and

based on the threat or, you know, what we're going in there to do, then we'll talk about what kind of equipment, you know, how many rounds of ammunition for each pistol and rifle, what kind of, uh, camouflage we're gonna wear, uh, then ask everybody about, you know, how good of a shot they are, that kind of stuff." Affiant believes that Doggart is informing CS-1 that he will make the decision, after the surveillance, concerning how to strike and when to strike. Doggart stated to CS-1 that his (Doggart's) "M-4 is battle-sited at 350 meters and it doesn't miss, so uh." Doggart then stated, "Yeah, I'll probably bring uh, I'll probably bring my M-4 with me just in case. You never know." Affiant believes this last statement is a reference to Doggart and others travelling to the area for reconnaissance, but Doggart would be prepared to use his weapon in case the need arose (in Doggart's mind) or if the opportunity presented itself.

17. On March 13, 2015, CS-1 spoke with Doggart on TT-1. Doggart stated that he wanted CS-1 to fly to Nashville on Monday, March 16 (2015) (affiant is aware that this date has now been changed to Tuesday, March 17, based upon a subsequent recorded phone call between Doggart and CS-1). Doggart explained that he would load his vehicle with firearms, which affiant believes are the weapons mentioned previously, and depart from Nashville that day after retrieving CS-1. Doggart stated that CS-1 would ride with Doggart. Doggart then stated that they would drive (in Doggart's vehicle) to New York. At some point, Doggart mentioned picking up other "members of the team" in the area, but affiant believes Doggart may be referring to a scenario in the future after Doggart and CS-1 conduct surveillance. CS-1 is unaware of the identities of the other "members" referenced by Doggart. Doggart informed CS-1 that the other eight individuals were committed to the cause and would carry out the mission. Doggart informed CS-1 that if they found "bad things" they were going to go to the area in three vehicles, with "ten men" and "people are going to die."

[*Id.* at Page ID # 567-68, ¶¶ 15-17].

Defendant also told CS-1 that he intended to tell the mayor of Hancock that the area Muslims were planning to contaminate the water supply or a river [*id.* at Page ID # 569, ¶ 18].

7

CS-1 reported to law enforcement that he believed this to be ruse to gain sympathy or cooperation from the mayor [*id.*]. Defendant stated he planned to be back in Nashville by March 19 and warned CS-1 that a reliable source had informed Defendant that their phones were being monitored [*id.*].

Based upon "law enforcement information and from listening to the recorded phone calls," SA Smith opines that Defendant, while using TT-1, has "issued threats against Muslims, living near Hancock New York," has made plans to travel "purportedly to conduct surveillance" on Islamberg, which Defendant believed was a "'Muslim training camp', and "ultimately intends to do more than just conduct surveillance of the facility and has made threats regarding the individuals, including threats to kill them." [*Id*. at Page ID # 565-66, ¶ 13]. The Wiretap Affidavit quotes Defendant as stating in an (undated) phone call with CS-1, "those guys [unintelligible] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." [*Id.* at Page ID # 566, ¶ 14]. SA Smith opines the unintelligible word is either "ought" or "have" [*id.*].

The Wiretap Affidavit also contains information on the other two named interceptees and notes their ties to what SA Smith opines are extremist and anti-government militia groups [*id*. at Page ID # 570-71, ¶¶ 21-22]. SA Smith states one of the interceptees recruited CS-1 as a "sniper" to "carry out attacks on Muslims in the United States, specifically in or near a location in Albany." [*Id.*]. SA Smith also avers that Defendant is a member of an organization known as "American Reapers," a group SA Smith opines is a "Christian based group with anti-Muslim and anti-government ideology" that "targets, or intends to target, Muslims in America." [*Id*. at Page ID # 565, 571, ¶¶ 12 & 22].

B. The Search Affidavit

SA Smith also signed the Search Affidavit supporting the application to search

Defendant's residence, vehicles, and the computer and the March 28, 2015 application for a search warrant [Docs. 116-1, Page ID # 825 & 116-2]. The Honorable William B. Carter issued the search warrant on the same day. The probable cause asserted in the Search Affidavit is based on Facebook postings by Defendant obtained pursuant to a different search warrant, a description of consensually recorded calls between Defendant and CS-1, a monitored meeting between CS-1 and Defendant, and a description of conversations obtained via the wiretap [Doc. 116-1 at Page ID # 810-16, ¶¶ 3-12]. The Government does not contest that Defendant has "standing" to challenge the wiretap.

## II.    ANALYSIS

Defendant has not requested, and is not entitled to, an evidentiary hearing on either motion. As the Court must under such circumstances, this report and recommendation will consider only the information contained within the four corners of the affidavits when addressing probable cause for authorization of the wiretap and search warrant. *See, e.g.*, *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."); *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (holding review of the sufficiency of a search warrant is limited to the "four corners of the affidavit.").

"The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III . . . ." *United States v. v. Alfano*, 838 F.2d 158, 161-62 (6th Cir. 1988). As the *Alfano* court held, "the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered." *Id.* at 161-62. Under 18 U.S.C. § 2518, the issuing judge approving a wiretap must also determine on the basis of facts submitted by the applicant that there is probable cause "for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in

section 2516" and "for belief that particular communications concerning that offense will be obtained through such interception." *United States v. Jackson,* 454 F. App'x 435, 438 (6th Cir. 2011).

Probable cause is present if the totality of the circumstances, viewed in a reasonable and common sense manner, reveals there is a fair probability that a wiretap will uncover evidence of a crime. *Id.* "In an application involving an informant, the totality of the circumstances analysis includes the veracity and basis of knowledge of persons supplying hearsay information, and the issuing judge must be reasonably assured that the informant was credible and the information reliable. A reviewing court affords great deference to the issuing judge's determination of the circumstances at the time of issuance." *Id.* (internal quotation marks and citations omitted).

### A. Motion to Suppress Wiretap Evidence

Title III addresses the admissibility of wiretap evidence. In pertinent part, it provides a wiretap order may be issued "if the judge determines on the basis of the facts submitted by the applicant that (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; [and] (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. § 2518(3)(a) & (b). *See also United States v. Jackson*, 454 F. App'x at 438 (outlining requirements). Title 18 U.S.C. § 2516 provides an exclusive list of the crimes for which a wiretap warrant may be pursued.

As noted in both the Wiretap Application and Wiretap Affidavit, and as acknowledged by the parties, only the 18 U.S.C. § 924(c) and § 844(e) offenses are predicates for authorization of a wiretap under Title III [Doc. 100-1 at Page ID # 559 n.1]. *See also* 18 U.S.C. § 2516(1)(c) and (1)(n). Defendant's single argument is that the facts asserted in the Wiretap Affidavit fail to set

10

Case 1:15-cr-00039-CLC-SKL   Document 131   Filed 08/23/16   Page 10 of 16   PageID #: 924

forth probable cause to believe Defendant had committed, was committing, or was about to commit either of these crimes.

Although Defendant noted CS-1 was a "paid" informant, Defendant has not challenged the reliability of CS-1 in his motion. Instead, Defendant argues the totality of the circumstances do not establish probable cause to believe Defendant either (1) used a telephone, or was preparing to use a telephone, to willfully make any threat, or to maliciously convey false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive, as required by § 844(e); or (2) used or carried or was preparing to use or carry a firearm in the commission of a crime of violence, or possessed a firearm in furtherance of a crime of violence, as required by § 924(c).

Defendant asserts that while the Wiretap Affidavit demonstrates probable cause to believe Defendant used a telephone, it does not establish that he issued, or was about to issue, a threat using the telephone. In his reply, Defendant claims, "had the issuing judge given adequate thought to the elements of § 844(e), he would have realized that a wiretap could not be justified under 18 U.S.C. § 2518(3)(a), the provision specifying that a wiretap can be issued only when 'there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter,' if the Affidavit was asserting that § 844(e) was the 'particular offense' upon which probable cause was to be based." [Doc. 119 at Page ID # 844-45].

Similarly, Defendant argues that while the Wiretap Affidavit demonstrates probable cause to believe Defendant legally possessed firearms, it does not establish that he possessed them in connection with or furtherance of a crime of violence. The Government counters with arguments

11

that there was abundant probable cause set forth in the Affidavit for issuance of the wiretap with respect to either offense.

I **FIND** the Wiretap Affidavit provides sufficient probable cause for issuance of a wiretap. Defendant has not challenged that the Wiretap Affidavit includes information from a known and reliable CS-1, consensually monitored communications, and various media postings; instead, he challenges the affiant's conclusions about the information learned during the investigation. Defendant, however, failed to provide support for his argument that the Wiretap Affidavit should be "stripped of the conclusory remarks" of SA Smith to determine probable cause [Doc. 100 at Page ID # 555]. Contrary to the implications of Defendant's argument about the affiant's conclusions, the law does not require the issuing judge to consider only the monitored comments of Defendant without the context and conclusions provided by SA Smith, a trained and experienced FBI agent. In short, the context of the monitored conversations is important. *See United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (citing *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987) ("In determining whether words were uttered as a threat the context in which they were spoken must be considered.").

Like the agent in *Jackson*, in this case SA Smith provided an investigative background of the matter and described his own training and experience, which he used as a basis for drawing reasonable conclusions. "[S]uch training and experience do not afford an officer *carte blanche* to speculate in any investigation, but instead, the training and experience fold into the overall evaluation of probable cause, as weighed by the issuing judge." *Jackson*, 454 F. App'x at 439. SA Smith's conclusions are not irreconcilable with the facts included within the four corners of the Wiretap Affidavit and it was entirely appropriate for the issuing judge to rely on his conclusions. *See id.*

12

Case 1:15-cr-00039-CLC-SKL   Document 131   Filed 08/23/16   Page 12 of 16   PageID #: 926

Among other information, the Wiretap Affidavit states Defendant explicitly told CS-1 on TT-1 that: "those guys [unintelligible but thought to be "ought" or "have"] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." [Doc. 100-1 at Page ID # 566, ¶ 14]. Among other quotes, the Wiretap Affidavit recites that Defendant said, "[y]ou know, we, once we commit to it we have to [be][sic] able to go in there and get our mind set, uh, and prepare to, to fire weapons. I mean, that's a big deal." [*Id.* at at Page ID # 567, ¶ 16]. The Wiretap Affidavit also clearly communicates the FBI wanted to use a wiretap of TT-1 to investigate crimes and that the investigation would likely uncover evidence of offenses, some of which Title III specifically permits wiretaps for and some of which it does not.

With respect to the predicate offense violation of 18 U.S.C. § 924(c), Defendant argues most of the crimes listed in the Wiretap Affidavit are not crimes of violence under § 924(c) based on the reasoning of *Johnson v. United States*, 135 S.Ct. 2551 (2015), which was not decided until three months after the wiretap was authorized on March 15, 2015. However, Defendant rightfully acknowledges that in *United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016), the Sixth Circuit Court of Appeals ruled *Johnson* does not apply to § 924(c). Defendant indicates he is making a *Johnson*-based argument merely to preserve it, but because this Court is bound to follow the law as interpreted by the Sixth Circuit, it is not necessary to address this "preserved" issue or the Government's various counterarguments. Defendant's argument under *Johnson* has no merit under current binding Circuit precedent. *See Taylor*, 814 F.3d at 379 (holding the definition of a

13
Case 1:15-cr-00039-CLC-SKL   Document 131   Filed 08/23/16   Page 13 of 16   PageID #: 927

crime of violence is not unconstitutionally vague).[2]

I **FIND** the Wiretap Affidavit contains probable cause to believe Defendant was, at least, about to commit a violation of 18 U.S.C. § 924(c) (by way of the underlying offense of § 249). For example, a reasonable reading of the Affidavit is that Defendant made statements to CS-1 regarding his plans to take a firearm, his M4 rifle, to Hancock, New York where he would be prepared to fire that rifle and cause bodily injury to the residents because of their religious beliefs in violation of 18 U.S.C. § 249. Therefore, it is not necessary to also address whether the Affidavit also contains probable cause to support a violation of § 844(e). In other words, Defendant's motion fails because even *if* the Wiretap Affidavit lacked probable cause of a crime under § 844(e),[3] it provided ample probable cause to believe Defendant was about to commit a violation of 18 U.S.C. § 924(c).

Defendant's First Amendment, Second Amendment, and general political speech arguments also do not provide a basis for concluding the Wiretap Affidavit fails to provide probable cause for issuance of a wiretap in connection with at least one predicate offense under Title III. "[A]cts and statements that 'instruct, solicit, or persuade others to commit crimes of

---

[2] The Government argues a violation of 18 U.S.C. § 249 is a crime of violence without regard to the residual clause analysis underlying *Johnson* under the use-of-force clause or the enumerated offense clause. *See* 18 U.S.C. § 924(e)(2)(B) (a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); or (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause")). In his reply, Defendant did not contest the Government's argument that § 249 remains a crime of violence under either the use-of-force or the enumerated offense clause.

[3] I also conclude the Wiretap Affidavit does, in fact, establish probable cause for the predicate § 844(e) offense as it must only establish probable cause, not guilt. *See Jackson*, 454 F. App'x at 439. At times, Defendant's arguments appear to conflate proof sufficient to support a conviction with probable cause for issuance of a wiretap. Whether the Government can ultimately prove an actual violation of § 844(e) with evidence of the use of threatening words for the purpose of intimidating the subject of the threat is not the standard for probable cause to issue a wiretap.

14

Case 1:15-cr-00039-CLC-SKL   Document 131   Filed 08/23/16   Page 14 of 16   PageID #: 928

violence' are not protected by the First Amendment and may be prosecuted." *United States v. Sattar*, 272 F. Supp. 2d 348, 374 (S.D.N.Y. 2003) (quoting *United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999)). These cases acknowledge a court should tread more carefully when first amendment concerns are implicated, but are also clear that solicitations to violence deserve no first amendment protection.[4]

Based on the totality of the circumstances presented within the four corners of the Wiretap Affidavit and the required due deference to the issuing judge, I **FIND** there is sufficient probable cause set forth in the Wiretap Application and Wiretap Affidavit to support Judge Mattice's conclusion that Defendant had committed, was committing, or was about to commit a particular offense enumerated in § 2516 and that particular communications concerning that offense would be obtained through interception of TT-1. *See Jackson,* 454 F. App'x at 438. Because I conclude there is ample probable cause, I **RECOMMEND** that the Court **DENY** Defendant's motion to suppress the wiretap evidence and its fruits.

### B. Motion to Suppress Search Warrant Evidence

In his second motion to suppress, Defendant argues that if his first motion to suppress the wiretap evidence is granted, then evidence from the wiretap must be excluded for all purposes, including its use to establish probable cause for the search of his home, vehicles, and computer. Defendant's single argument is that without the evidence obtained from the wiretap, there is insufficient probable cause set forth in the Search Affidavit to support authorization of a warrant for the search of Defendant's home, vehicles, and computer. As I am recommending denial of Defendant's first motion to suppress the wiretap evidence, Defendant's second motion to suppress

---

[4] In addition, as argued by the Government, sometimes even "innocent behavior" may provide a basis for finding probable cause. *See Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983) (noting probable cause requires only a probability or substantial chance of criminal activity).

also fails.

Defendant has not claimed a lack of probable cause if the evidence obtained from the wiretap was properly included and considered in the Search Affidavit. Accordingly, it is not necessary for the Court to address the Government's alternative arguments that even if the wiretap was unlawfully issued, the search would still be valid because the good faith exception to the exclusionary rule would apply and/or the Search Affidavit would still contain sufficient probable cause after the wiretap information was excised.

As I conclude Defendant's first motion to suppress the wiretap evidence should be denied, I also **RECOMMEND** that the Court **DENY** Defendant's motion to suppress the evidence obtained during the search of Defendant's residence, vehicles, and computer on the basis that the Search Affidavit, with the wiretap materials, establishes probable cause for the search.

### III. CONCLUSION

After having considered all evidence and argument, and for the reasons stated above, I **RECOMMEND**[5] that Defendant's motions to suppress [Docs. 98 & 115] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).