UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:15-cr-39 |
| v. | ) | |
| | ) | Judge Collier |
| ROBERT R. DOGGART | ) | Magistrate Judge Lee |

## **MEMORANDUM & ORDER**

Defendant Robert R. Doggart filed a motion to suppress all evidence obtained as a result of a wiretap authorized by this Court (Doc. 98) and a motion to suppress all evidence from a later search of Defendant's residence, vehicles, and computer (Doc. 115). The motions to suppress were referred to United States Magistrate Judge Susan K. Lee for a report and recommendation pursuant to 28 U.S.C. § 636(b) by standing order. Magistrate Judge Lee filed a Report and Recommendation on August 23, 2016 (the "R&R") recommending denial of both motions. (Doc. 131.) Defendant objected to the R&R on September 2, 2016. (Doc. 133.) For the following reasons, the Court **ACCEPTS and ADOPTS** the R&R and **DENIES** Defendant's motions to suppress.

I.  BACKGROUND

The relevant facts are not in dispute.

On March 15, 2015, the Government applied for authorization to intercept Defendant's wire communications based on the affidavit (the "Wiretap Affidavit") of Special Agent James G. Smith ("Smith") of the Federal Bureau of Investigation (the "FBI"). The Wiretap Affidavit lists

several statutes as to which Smith alleged there was probable cause to believe an offense was being committed, including 18 U.S.C. § 844(e), 18 U.S.C. § 924(c), and 18 U.S.C. § 249.[1]

The Wiretap Affidavit says a confidential source ("CS-1") who had previously given reliable information to law enforcement in other matters brought Defendant to the attention of law enforcement in November 2014.[2] (Doc. 100-1 ¶ 10.) CS-1 had met Defendant online through the closed or private Facebook page for "American Reapers." (*Id.* ¶¶ 10, 12.) Other FBI agents had informed Smith "that American Reapers is a 'Christian based group with anti-Muslim and anti-government ideology.'" (*Id.* ¶ 12.) Smith investigated Defendant through social media, by monitoring phone calls between CS-1 and Defendant, and through other investigative techniques.

The Wiretap Affidavit recites that, among other things, CS-1 "informed law enforcement agents that in or about February 2015, Doggart attempted to recruit others for an 'operation' wherein he and others would attack a 'Muslim training camp' in New York." (*Id.* ¶ 11.) This call was not monitored. Later monitored phone calls between CS-1 and Defendant in early March, however, included discussions of Defendant's plan to go to Hancock, New York, to conduct surveillance or "recon" the following week of an area known as "Islamberg" (*id.* ¶ 14) where, according to Smith, "Doggart believes Muslims live" (*id.* ¶ 11) and "which Doggart believes is a 'Muslim training camp'" (*id.* ¶ 13). During that monitored call, Defendant "stated to CS-1 he planned to visit the mayor of Hancock, New York, to tell him the Muslims in the

---

[1] Both 18 U.S.C. § 844(e) and 18 U.S.C. § 924(c) state offenses which can support the issuance of a wiretap order. The Wiretap Affidavit described the other offenses listed, including 18 U.S.C. § 249, as "either underlying crimes of violence for 18 U.S.C. § 924(c) or are integrally associated with this criminal activity." (Doc. 100-1 at 2 n.1.)

[2] The R&R quotes the Wiretap Affidavit at length. These quotations will not all be repeated in full here.

2

compound were planning on contaminating a water supply or a river," which CS-1 later said he believed to be a ruse to secure the mayor's cooperation or sympathy against the residents of Islamberg.  (*Id.* ¶ 18.)

As set out in the Wiretap Affidavit, Defendant's monitored calls with CS-1 did not just include discussions of surveillance plans.  They also included Defendant's "issu[ing] threats against Muslims living near Hancock, New York" (*id.* ¶ 13), with the following quotations from Defendant regarding either the surveillance trip planned for the following week or a proposed attack to follow that surveillance:

- "[T]hose guys [unintelligible] to be killed.  Their buildings need to be burnt down.  If we can get in there and do that not losing a man, even the better."  (*Id.* ¶ 14.)

- "[O]nce we commit to it we have to be able to go in there and get our mind set, uh, and prepare to, to fire weapons.  I mean, that's a big deal."  (*Id.* ¶ 16.)

- "[L]et's see what we find next week and based on the threat or, you know, what we're going in there to do, then we'll talk about what kind of equipment, you know, how many rounds of ammunition for each pistol and rifle, . . . then ask everybody about, you know, how good of a shot they are . . . ."  (*Id.*)

- "Yeah, I'll probably bring uh, I'll probably bring my M-4 with me just in case.  You never know."  (*Id.*)

- If Defendant and CS-1 found "bad things," they would go in with "ten men" and "people are going to die."  (*Id.* ¶ 17.)

According to the Wiretap Affidavit, Defendant's personal Facebook page included statements about recruiting "expert Gunners" to "utterly destroy[]" a target; that "[a] physical conflict would seem to be inevitable," and that  "[w]e shall be Warriors who will inflict horrible numbers of casualties upon the enemies of our Nation and World Peace."  (*Id.* ¶ 12.)

3

On March 15, 2015, based in part on the Wiretap Affidavit, United States District Judge Harry S. Mattice, Jr. signed an order (the "Wiretap Order") authorizing the interception of Defendant's wire communications for a specified period of time based on the Government's application and the Wiretap Affidavit.

On March 28, 2015, the Government applied for a search warrant for Defendant's residence, vehicles, and computers. The affidavit supporting the application (the "Search Affidavit") was also signed by Smith. In it, Smith asserted there was probable cause to search Defendant's residence, vehicles, and computers for evidence of violations of 18 U.S.C. §§ 247 and 371. The Search Affidavit includes some of the same information as the Wiretap Affidavit. It also includes a description of conversations intercepted by authority of the Wiretap Order. United States Magistrate Judge William B. Carter issued the search warrant the same day.

On April 13, 2015 Defendant was charged in a criminal complaint with (1) solicitation under 18 U.S.C. § 373 to violate 18 U.S.C. § 247(a)(1) by intentionally defacing, damaging, or destroying religious real property, because of the religious character of that property, or attempting to do so, and (2) transmitting in interstate or foreign commerce a communication containing a threat to kidnap or injure a person under 18 U.S.C. § 875(c). (Doc. 1.) A bill of information was filed on April 24, 2015, charging Defendant only with transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). (Doc. 12.)

On July 7, 2015, a federal grand jury returned a one-count indictment against Defendant charging him with solicitation to commit a civil-rights violation under 18 U.S.C. § 247(a)(1) and 18 U.S.C. § 373. (Doc. 37.) On May 3, 2016, a Superseding Indictment was returned modifying Count One and adding three additional counts: solicitation to commit arson of a building under

4

18 U.S.C. § 844(i) and 18 U.S.C. § 373 (Count Two), and two counts of making a threat in interstate commerce (Counts Three and Four). (Doc. 84.)

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and "may receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## III. DISCUSSION

Defendant objects to the Magistrate Judge's determination that the Wiretap Affidavit contained probable cause to believe Defendant was about to commit a predicate offense sufficient to support the authorization of a wiretap. To this end, he objects to the Magistrate Judge's analysis under both 18 U.S.C. § 844(e) and 18 U.S.C. § 924(c). In the event the Court grants his motion to suppress the wiretap, Defendant requests review of his second motion to suppress, pertaining to the evidence from the later search of Defendant's residence, vehicles, and computer. Defendant alleges there would not have been probable cause for that search without the evidence gained through the wiretap. Because the Court concludes the Wiretap Affidavit contained probable cause and there is therefore no reason to suppress the results of the wiretap, it is unnecessary to analyze Defendant's motion to suppress the search of his residence, vehicles, and computer further.

5

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 *et seq.*, allows a wiretap to be ordered if, among other things, there is both probable cause to believe someone "is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. §] 2516" and probable cause to believe the requested wiretap would intercept communications regarding that offense. 18 U.S.C. § 2518(3)(a), (b). As relevant to the Wiretap Affidavit, the particular enumerated offenses that can support the issuance of a wiretap order include the threat of an unlawful use of explosives in violation of 18 U.S.C. § 844(e) and the use, carrying, or possession of a firearm in furtherance of a "crime of violence" in violation of 18 U.S.C. § 924(c). 18 U.S.C. § 2516(1)(c), (n).

Under Sixth Circuit law, "[t]he basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III . . . ." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). "[T]here is no specific formula that must be met for a warrant, and . . . evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). While certainty is not required, there must be a "fair probability," but more than a "mere suspicion," that a wiretap will discover particular evidence of a crime. *Id.* at 162; *see also United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011). "Facts can amount to a fair probability without being proof beyond a reasonable doubt or even a *prima facie* showing," and the probable cause standard does not "require that every contrary hypothesis be excluded." *Id.* Finally, because "the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, 'great deference' is normally paid to the determination of an issuing judge." *Id.*; *see also United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

### A. 18 U.S.C. § 844(e) as a Predicate Offense

Defendant first objects to the portion of the R&R addressing 18 U.S.C. § 844(e) as a predicate for authorizing a wiretap. The statute provides as follows:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully *makes any threat*, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. § 844(e) (emphasis added). Defendant claims the R&R did not address his argument that the Wiretap Affidavit did not establish probable cause to believe Defendant was using his telephone to communicate a "threat," which he argues criminalizes only certain types of threatening statements, namely words "communicated for the purpose of effecting some change or goal through intimidation." (Doc. 133 at 3 (citing *United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997), *abrogation on other grounds recognized by United States v. Houston*, 792 F.3d 663, 667 (2015)).) Defendant objects to the R&R for failing to address whether the Wiretap Affidavit established probable cause to believe those particular, criminalized types of threatening statements were at issue.

The Court finds this objection to be without merit. The Wiretap Affidavit needed to contain probable cause to support only one predicate offense. As the R&R stated, the Magistrate Judge did not perform a detailed analysis of probable cause under § 844(e) because it was unnecessary to do so once she found the Wiretap Affidavit contained probable cause to believe Defendant was about to violate the other predicate offered for obtaining a wiretap, § 924(c). (Doc. 131 (R&R) at 14.) Because the Court agrees the Wiretap Affidavit contains probable cause under § 924(c), as set out below, any further analysis of probable cause under § 844(e) by

7

the Magistrate Judge or by this Court could have no effect on the outcome of Defendant's motion.[3]

### B. 18 U.S.C. § 924(c) as a Predicate Offense

Defendant objects to the portion of the R&R addressing the second potential predicate for authorizing a wiretap: a firearm offense under 18 U.S.C. § 924(c). Section 924(c) applies to "any person who, during and in relation to *any crime of violence* or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A) (emphasis added). "Crime of violence," in turn,

> means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).[4]

The specific alleged "crime of violence" addressed in the R&R is a hate crime under 18 U.S.C. § 249, defined as occuring when a person

---

[3] The Magistrate Judge expressed the conclusion in a footnote of the R&R that probable cause did exist as to 18 U.S.C. § 844(e). She correctly noted Defendant's arguments were sometimes directed towards a reasonable-doubt standard, when all that was necessary was to find probable cause. In any event, no analysis regarding probable cause under 18 U.S.C. § 844(e) could change the recommendation in the R&R or the conclusions in this Order.

[4] Despite some similarities in statutory language between 18 U.S.C. § 924(c) and (e), the Supreme Court's opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), on the grounds that it was unconstitutionally vague, does not apply to the definition of "crime of violence" in 18 U.S.C. § 924(c). *United States v. Taylor*, 814 F.3d 340, 375–76 (6th Cir. 2016).

> [w]illfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person . . . .

18 U.S.C. § 249(a)(1).

Defendant questions whether 18 U.S.C. § 249(a) qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(1)(A). Defendant makes no argument in his objection (or in his original motion) that 18 U.S.C. § 249(a) is not a crime of violence, but he objects to the analysis in the R&R as incomplete.

The Court agrees with the Magistrate Judge's conclusion that 18 U.S.C. § 249(a) is a "crime of violence" for purposes of 18 U.S.C. § 924(c)(3). First, violation of 18 U.S.C. § 249(a) is a felony as required by 18 U.S.C. § 924(c)(3), in that it carries a maximum term of imprisonment of ten years or life, depending on the specifics of the offense. 18 U.S.C. § 249(a)(1)(A), (B). Second, it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," as required by 18 U.S.C. § 924(c)(3)(A). "Physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).[5] The two options under 18 U.S.C. § 249(a)(1)—either willfully causing bodily injury to a person or attempting to cause bodily injury to a person by using "fire, a firearm, a dangerous weapon, or an explosive or incendiary devise"—both categorically include an element of using or attempting to use physical, violent force sufficient to cause physical pain or injury. Defendant's objection on this ground is overruled.

---

[5] *Johnson v. United States*, 559 U.S. 133 (2010), addressed the term "physical force" as it is used in the definition of "violent felony" in the ACCA. The same definition of "physical force" applies to the definition of "crime of violence" in 18 U.S.C. § 924(c)(3). *United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016).

9

Defendant next argues there was no probable cause to believe Defendant was committing or was about to commit a violation of 18 U.S.C. § 249 because there was not enough factual support in the Wiretap Affidavit for the "because of" element of the crime—that the bodily injury Defendant was alleged to be about to cause or attempt to cause was "***because of*** the actual or perceived race, color, religion, or national origin of" the intended target population. *See* 18 U.S.C. § 249(a)(1) (emphasis added). Defendant argues it was Smith who inserted the term "Muslim" into the Wiretap Affidavit, while the only religion Defendant is quoted as referencing is his own. (Doc. 133 at 5.) Defendant argues that because probable cause must be based on "facts," Smith's suppositions and conclusions regarding Defendant's motivations should be disregarded, and without them, "there is insufficient evidence to establish Mr. Doggart was committing a violation of § 249." (*Id.* at 6.)

Defendant misconstrues the Wiretap Affidavit when he argues it was Smith, rather than Defendant, who "inserted" the term "Muslim" into the affidavit. Although parts of the Wiretap Affidavit do include Smith's own assertions that Defendant's alleged targets were Muslim, other parts of the affidavit indicate Defendant himself was aware of and made statements regarding the religion of his alleged targets. CS-1 told law enforcement Defendant had "attempted to recruit others for an 'operation' wherein he and others would attack a 'Muslim training camp' in New York."[6] (Doc. 100-1 ¶ 11.) Smith summarized discussions during monitored calls as reflecting Defendant's belief that Muslims lived in Islamberg and that Islamberg was a "Muslim training camp." (*Id.* ¶¶ 11, 13.) Smith reported Defendant's monitored discussion of his plan to visit the local mayor "to tell him the Muslims in the compound" were planning a terrorist act. (*Id.* ¶ 18.)

---

[6] Information contained in a warrant affidavit "need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (2000).

Smith had also learned from other FBI agents that the American Reapers Facebook group, of which Defendant was a member, "had anti-Muslim and anti-government ideology." (*Id.* ¶ 12.)

It is true the Wiretap Affidavit includes more and longer direct quotations from Defendant regarding potential violence than it includes regarding the identity or religion of Defendant's alleged targets. This is not surprising given the qualitative differences between the two types of information: taking a commonsense approach, what Defendant thought to be his targets' religion may be told much more summarily than the nuances of his statements regarding potential violence. The Court will not reject the Wiretap Affidavit on such a hyper-technical basis. *See United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) ("The affidavit should be reviewed in a commonsense—rather than a hypertechnical—manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny.").

Defendant also misconstrues the burden the Government must meet in the Wiretap Affidavit. The Government must establish probable cause, not "proof beyond a reasonable doubt or even a *prima facie* showing," to justify a wiretap order. *Alfano*, 838 F.2d at 162. Defendant argues he was motivated by his "concern that the people in the community were planning on poisoning New York City's water supply," not by their religion, and the Wiretap Affidavit therefore fails to establish probable cause as to the "because of religion" element of 18 U.S.C. § 249.[7] (Doc. 133 at 5.) The Wiretap Affidavit does not have to exclude every such contrary hypothesis, however. *See Alfano*, 838 F.2d at 162. "There is probable cause even if a 'succession of superficially innocent events ha[s] proceeded to the point where a prudent man

---

[7] The "because of" language of 18 U.S.C. § 249(a) does require the victim's protected characteristic to be a "but-for" cause in terms of a defendant's motivation. *See United States v. Miller*, 767 F.3d 585, 591–92 (6th Cir. 2014).

11

could say to himself that an innocent course of conduct was substantially less likely than a criminal one.'" *Id.* at 163 (quoting *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975)) (alteration in original).

Considering the totality of the circumstances, the Wiretap Affidavit raises a fair probability Defendant was targeting the residents of Islamberg "because of" their religion, and this is all that was required. *See, e.g., id.* at 162 (probable cause for issuing wiretap order existed based on recurring pattern of phone calls among conspirators who were members of a family, combined with some use of pay phones and some use of a drug-related code, despite the defendant's contrary hypothesis that the calls could have involved innocuous family matters). Defendant's objection to the Magistrate Judge's conclusion that the Wiretap Affidavit contained probable cause as to a violation of 18 U.S.C. § 249(a), and therefore also as to 18 U.S.C. § 924(c), is overruled.

IV. **CONCLUSION**

The Court **ACCEPTS** and **ADOPTS** the R&R (Doc. 131). Defendant's motions to suppress (Docs. 98, 115) are **DENIED**.

**SO ORDERED.**

**ENTER:**

/s_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**