UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:15-cr-39 |
| v. | ) | |
| | ) | Judge Collier |
| ROBERT R. DOGGART | ) | Magistrate Judge Lee |

## **M E M O R A N D U M**

Before the Court is Defendant Robert R. Doggart's renewed motion for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. (Docs. 185, 186.) The government has responded (Doc. 197), and Defendant has replied (Doc. 205). On March 27, 2017, the Court invited the parties to file supplemental briefs on the impact of the March 23, 2017 decision of the Court of Appeals for the Sixth Circuit in *United States of America v. Clifford Leon Houston,* No. 16-5007, -- F. App'x --, 2017 WL 1097138 (6th Cir. March 23, 2017). (Doc. 207.) Both parties filed supplemental briefs on April 4, 2017. (Docs. 210, 211).

Having considered the parties' arguments and the evidence at trial, the Court concludes there was sufficient evidence to sustain Defendant's convictions on Counts One and Two of the Superseding Indictment, solicitation to commit a civil rights violation under 18 U.S.C. § 247(a)(1) and solicitation to commit arson of a building under 18 U.S.C. § 844(i). As to Counts Three and Four, making threats in interstate commerce on March 22 and April 9, 2015 in violation of 18 U.S.C. § 844(e), the Court determines there was not enough evidence for the jury to have found beyond a reasonable doubt Defendant made threats on those dates for the purpose of effecting a change or achieving a goal through intimidation. *See United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997) *abrogated in part on other grounds by Elonis v. United*

*States*, 135 S. Ct. 2001 (2015); *see also Houston,* 2017 WL 1097138, at *4. Accordingly, the renewed motion for judgment of acquittal (Doc. 185) will be **GRANTED IN PART** as to Counts Three and Four and **DENIED IN PART** as to Counts One and Two.

I. **BACKGROUND**

On July 7, 2015, a federal grand jury returned a one-count Indictment against Defendant charging him with solicitation to commit a civil rights violation under 18 U.S.C. § 247(a)(1) and 18 U.S.C. § 373.[1] (Doc. 37.) On May 3, 2016, a Superseding Indictment was returned modifying Count One and adding three additional counts: solicitation to commit arson of a building under 18 U.S.C. § 844(i) and 18 U.S.C. § 373 (Count Two) and two counts of making a threat in interstate commerce in violation of 18 U.S.C. § 844(e) (Counts Three and Four). (Doc. 84.) Specifically, Defendant was charged with the following:

(I) Between February and April 2015, engaging in solicitation to intentionally damage and destroy, through the use of a dangerous weapon, explosives, and fire, religious real property, namely a mosque in the state of New York, because of the religious character of the property, in violation of 18 U.S.C. §§ 247(a)(1) and 373;

(II) Between February and April 2015, engaging in solicitation to maliciously damage and destroy, by means of fire and explosive, a building and other real and personal property used in interstate and foreign commerce, namely a mosque in Hancock, New York, in violation of 18 U.S.C. §§ 844(i) and 373;

---

[1] Defendant had previously been charged in an April 13, 2015 criminal complaint with (1) solicitation under 18 U.S.C. § 373 to violate 18 U.S.C. § 247(a)(1) by intentionally defacing, damaging, or destroying religious real property, because of the religious character of that property, or attempting to do so, and (2) transmitting in interstate or foreign commerce a communication containing a threat to kidnap or injure a person under 18 U.S.C. § 875(c). (Doc. 1). A bill of information was filed on April 24, 2015, charging Defendant only with transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). (Doc. 12.)

(III) On March 22, 2015, willfully making a threat through a telephone and other instrument of interstate commerce to kill, injure, and intimidate any individual and unlawfully damage and destroy a building and other real and personal property, by means of fire and an explosive, in violation of 18 U.S.C. § 844(e); and

(IV) On April 9, 2015, committing another offense of the kind charged in Count III.

Defendant pleaded not guilty and was tried before a jury for eight days beginning on February 6, 2017. During the trial, the government introduced printouts of Facebook communications from February and March 2015 in which Defendant asked at least eight different individuals to join him as gunners or in attacks on "FEMA, Jihadists, and Foreign Consulates," specifically identifying "Papa-Oscar-November 26, Target 3" as a jihadist training facility, and asking one individual if he would travel with Defendant to Hancock, New York with a firearm and five hundred rounds of ammunition.

The government introduced recordings of numerous telephone calls in which Defendant discussed plans to attack and destroy a mosque, school, and kitchen or cafeteria in Islamberg, an Islamic community near Hancock, New York. Defendant described Islamberg as a "Muslim training camp" and said its residents were planning terrorist activity. He discussed making an armed or unarmed surveillance trip; having a team of nine other men to attack the compound; using Molotov cocktails or a "demolition guy" to burn down the buildings; hoping not to kill anyone, but that he would be a standoff gunner and would be heavily armed; whether to make a pre-emptive strike or to wait until the federal government would declare martial law in reaction to events elsewhere; creating a "flash point" by burning down "a Muslim church or something like that"; that "those guys [unintelligible] to be killed. Their buildings need to be burnt down"; and that if Defendant found bad things during his surveillance, "people are going to die."

The evidence showed that on March 17, 2015, Defendant drove from Chattanooga to Nashville, Tennessee to meet a man from Texas with whom Defendant had already had multiple Facebook and telephone conversations regarding an attack. Unknown to Defendant, the man was a confidential source for the government (the "CS"). Defendant picked the CS up at the Nashville airport, drove him to a restaurant where the two had lunch together, and then drove the CS to his hotel. Defendant and the CS discussed strategies for attacking Islamberg, how many people would be needed, who those people would be, and what weapons, ammunition, and equipment they would need. Defendant gave the CS literature on Islamberg, including a map identifying the buildings he intended to destroy, along with literature on New York's gun laws. Defendant also showed the CS an M-4 rifle and a shotgun he had brought with him to Nashville, saying he had brought them to show the CS his intentions were serious.

The evidence also included multiple telephone conversations between Defendant and a man in South Carolina named William Tint. Defendant and Mr. Tint discussed a possible joint political run, as well as plans to attack Islamberg. On March 22, 2015, the date identified for the threat offense in Count Three, the following exchange took place as part of a conversation between Defendant and Mr. Tint:

> <u>Defendant:</u> . . . . Hey, um, I appreciate this phone call and I am going to start making these phone calls here, ah, to the rest, to the rest of my, my nine guys and, uh, you know, see if I can't get them committed, find out what their kind of equipment they have on, what their experiences are, what kind of gunners they are, and, ah, you know, what they know about of tactics and all that stuff. If we are going up there to that little Islamberg, we are going to have to burn it down. Uh, I don't want to kill anybody, but if we burn down their, uh, and there's our three targets. There's the kitchen, there's the, uh, the mosque, and uh, and uh, then there of course is uh, their school. If we take out those three components, those three buildings, and we can just walk away. And, we will have taken care of that. Now, you know, if they start laying down fire on us, we are just going to have to take them out.
>
> <u>Tint:</u> I have an EOD guy.

>Defendant: Okay.

>Tint: I don't know if you know what that is but, um, it's demolition.

>Defendant: Yeah, yeah. Okay. Well then, that is, that is important because we were going to discuss before going up there, what kind of incendiary devices we're going to use, what kind of accelerants we're going to use. Uh, if, if we have a, a, you know, a demolition device that can just, you know do a single explosion to do enough damage to burn a building down, that's the best part. You know, I don't want to have to throw a gallon of gas in there and you know, burn some kind of thing to light it up and hope it, you know, hope it burns down. We need to know it has to burn down. Demolition guy, ah, yeah, that, that would do it.

On March 29, 2015, Defendant drove to South Carolina to visit one of his daughters and to meet Mr. Tint in person. As with the trip to Nashville, Defendant took weapons with him to South Carolina. The meeting with Mr. Tint, however, did not take place.

On April 9, 2015, the date identified for the threat offense in Count Four, Defendant met for lunch in Chattanooga with the CS, another Facebook contact of Defendant's who had travelled in from Illinois, and a local real estate agent. Defendant discussed coordination and tactics for an attack on Islamberg, whether or not the attackers could escape, who would participate in the attack, the threats posed by the residents of Islamberg, conducting reconnaissance, whether to attack preemptively or reactively, and what the effects of an attack would be. At the end of the meeting, Defendant told the CS he did not want to kill children, but there was always collateral damage. Later that day, Defendant had another telephone call with Mr. Tint. Defendant said he would travel to Hancock on Saturday, April 11, to conduct reconnaissance. Defendant warned Mr. Tint they needed to be careful when talking about their plan on the phone, followed by the following exchange:

>Defendant: (Unintelligible) uh, when you and I talked about this other specialist fellow that uh, I, I don't know his name, but you had mentioned that he has a special skill with uh, uh putting materials together to make uh, uh...

>Tint: Yeah.

5

>    <u>Defendant:</u> Fire, fireworks and uh, I was wondering about, uh, you know, that. Do you think uh he is someone to be uh discussed with?
>
>    <u>Tint:</u> Awww, he's, he's, he's a good person.

The evidence included the testimony of two residents of Islamberg, Mohammed Clark and Noori Brooks. They testified that people from outside of New York state visit the mosque in Islamberg and make financial contributions to it. They also testified that the community of Islamberg operates a summer camp which charges a small fee and draws campers from other states. The camp uses the mosque for some of its activities. While both men testified that they did not know about Defendant or his statements until after his arrest, the camp was cancelled in 2015 because of security concerns. Mr. Brooks also testified that he and his wife own Zavia Books, a limited liability company that operates on the second floor of the mosque in Islamberg. Zavia Books did not print its first book until May 2015, but it was preparing for operations in the months before that, buying its first piece of heavy equipment in approximately April 2015.

The government introduced a Sig Sauer M400 rifle, a Mossburg 500A shotgun, and an estimated five thousand rounds of ammunition, including tracer ammunition, all of which were seized during a search of Defendant's home.

Defendant moved for a judgment of acquittal on all counts under Rule 29(a) at the end of the government's proof and again at the end of all proof. (Doc. 173.) The Court denied both motions. On February 16, 2017, the jury returned a verdict of guilty on all counts. (Doc. 179.) Defendant filed a timely Rule 29(c) renewed motion for judgment of acquittal on February 24, 2017. (Doc. 185.)

## II. STANDARD OF REVIEW

A defendant may move for a judgment of acquittal within fourteen days of a guilty verdict or the jury's discharge. Fed. R. Crim. P. 29(c)(1). Such a motion must be granted if "the evidence is insufficient to sustain a conviction." *Id*. at (a). In reviewing a challenge to the sufficiency of the evidence, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making its determination, the court does not make an independent judgment on the credibility of witnesses or the weight of the evidence. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002). "Even circumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt." *Id.* A defendant challenging the sufficiency of the evidence to support a guilty verdict "bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

## III. ANALYSIS

Defendant argues there was insufficient evidence for a conviction on any of the counts against him. The Court analyzes each of Defendant's arguments in turn.

### A. Count One: Solicitation to Commit a Civil-Rights Violation

Count One charged Defendant with solicitation between February and April 2015 to intentionally damage and destroy, through the use of a dangerous weapon, explosives, and fire, religious real property, namely a mosque in the state of New York, because of the religious character of the property, in violation of 18 U.S.C. §§ 247(a)(1) and 373. (Doc. 84.) Defendant

presents multiple arguments for acquittal on Count One based on the alleged insufficiency of the evidence against him.

First, Defendant argues he had no intent to solicit anyone, in that there was no evidence of a plan that was sufficiently developed and definite for him to have solicited anyone to participate in it. His second argument is similar: because there was insufficient evidence he had selected a particular plan to destroy the mosque, there was insufficient evidence that he intended to destroy the mosque or solicited anyone to do so. Defendant points as an example to the ways in which he varied regarding whether there should be an attack, what the triggering event for an attack should be, and whether an attack should be reactive or preemptive.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to have concluded Defendant both intended to solicit another person to commit a felony crime of violence and intended to destroy the mosque. The crime of solicitation does not require that a plan be definite, final, or fully developed. The Court instructed the jury on what constitutes solicitation and the circumstances to consider in determining Defendant's intent. Despite variations among Defendant's statements, the jury heard recordings of conversations and read Facebook messages in which he repeatedly discussed how, when, and why to attack the mosque; how many people to take, who those people would be, and what their roles, skills, and equipment should be; what Defendant's role, skills, and equipment were, including showing others his weaponry; what the consequences of the attack could be; and how to try to escape detection after the attack. There was sufficient evidence to support the jury's verdict on Defendant's intent to solicit and his intent to destroy the mosque.

Next, Defendant argues there was insufficient evidence that the religious character of the mosque was a but-for cause of his actions. He argues he was concerned about possible terrorism,

8

not religion.  As the government acknowledges, Defendant sometimes said he did not have any animosity towards Islam or that some practitioners of Islam are peaceful.  But he also made multiple references to Muslims, mosques, and the Muslim religion as antithetical to the United States and as legitimate targets for his aggression, for example referring to "religious buildings of the . . . evil type, and that would be our Islamic foes."  (Gov't Ex. 123.)  To the extent the evidence could have showed Defendant was concerned about terrorism, it was also sufficient to show his reason for thinking the residents of Islamberg were terrorists was, in fact, their religion.  The jury had sufficient evidence on which to base its finding that the religious character of the mosque was a but-for cause of Defendant's actions.  In view of the evidence presented, the jury was entitled to make such a finding.

Defendant's next argument is a novel one.  He argues a civil-rights violation under 18 U.S.C. § 247(a) cannot by its very nature support a solicitation charge.  He employs the following reasoning.  The federal crime of solicitation does not occur unless the crime solicited is a felony.  18 U.S.C. § 373(a).  The substantive civil-rights statute at issue, however, sets different penalties depending on the degree of damage that actually results from the crime.  18 U.S.C. § 247(d).  If the resulting damage does not fall into one of the categories in subsections (d)(1), (2), or (3), then the maximum imprisonment for the substantive crime is one year under subsection (d)(4), making it a misdemeanor, not a felony.  Because solicitation does not require completion of the crime solicited, there can be no proof to show what damage resulted from completion of the crime as required to determine the statutory maximum punishment under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the solicited crime therefore must be considered as a misdemeanor.  In short, Defendant argues it is impossible to commit the federal crime of soliciting a violation of 18 U.S.C. § 247 because the questions of whether the solicited

offense was a felony and whether the solicited offense was a crime of violence can never be answered unless the crime is completed.

The Court declines to adopt Defendant's reasoning. The harm punished in solicitation is not necessarily the harm of the completed solicited crime. It may be instead the increased risk that the person the defendant solicits will commit a crime. The jury in a solicitation case must always start from the actual words and actions of the defendant and move forward to consider whether those words and actions show the defendant ***intended*** the other person to commit "a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another." 18 U.S.C. § 373. The Court instructed the jury that it could not convict Defendant on Count One unless it found the damage or destruction Defendant was alleged to have solicited would have met each of the requirements of 18 U.S.C. § 247(d)(3), which describes a felony. Asking the jury to make this kind of determination is not unique to the solicitation of a civil-rights violation under 18 U.S.C. § 247; it is inherent in the nature of a solicitation crime, where completion of the crime solicited is not required.

Finally, Defendant argues a civil-rights violation under the specific subsection as to which he was charged, 18 U.S.C. § 247(d)(3), cannot support a solicitation conviction because it is indivisible under *Descamps v. United States*, 133 S. Ct. 2276 (2013), and does not necessarily involve the physical force required to constitute a "crime of violence" now that the residual clause of 18 U.S.C. § 16, which defines "crime of violence," has been held to be unconstitutionally vague in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016).

Subsection (d)(3) applies

if bodily injury to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this section, results from the acts committed in violation of this section ***or*** if such acts include the use,

> attempted use, or threatened use of a dangerous weapon, explosives, or fire, a fine in accordance with this title and imprisonment for not more than 20 years, or both.

18 U.S.C. § 247(d)(3) (emphasis added). Defendant argues the first half of the subsection applies if bodily injury results, and bodily injury may result without the application of physical violence, even though the Superseding Indictment only included language tracking the second half of the subsection.

This, like Defendant's preceding argument, is a limb onto which the Court is not inclined to climb. A statute is indivisible if it sets out a single set of elements to define a single crime and any alternatives within the statute are merely alternative factual means of satisfying the required elements. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Defendant provides no authority or analysis to support his proposition that section 247(d)(3) is indivisible. The Court sees no reasonable way to construe the statute other than as divisible, with one alternative element being bodily injury to any person, and the other being the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire. Defendant's final argument on Count One therefore fails at his first step.[2]

---

[2] The Court has doubts about the other steps, as well. Defendant does not explain why a divisibility analysis is appropriate to begin with. The Court is not looking back on a previous conviction to determine whether it was a crime of violence for the purposes of enhancing the penalty for a different crime. The Court is examining whether the evidence in front of the jury in this very case was sufficient to find Defendant guilty beyond a reasonable doubt of soliciting a crime of violence. It is also unclear how a change in the definition of "crime of violence" in 18 U.S.C. § 16 is relevant here. The solicitation statute does not use the term "crime of violence" or incorporate the definition set out in 18 U.S.C. § 16. It contains its own language, which tracks 18 U.S.C. § 16(a), but not the language in 18 U.S.C. § 16(b) that was held unconstitutionally vague in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016). Finally, the Court agrees with the government that Defendant has not sufficiently shown how bodily injury could result from the intentional damage or destruction of religious real property ***without*** the use, attempted use, or threatened use of physical force against a person or property.

B. **Count Two: Solicitation to Commit Arson**

Count Two charged Defendant with solicitation between February and April 2015 to maliciously damage and destroy, by means of fire and explosive, a building and other real and personal property used in interstate and foreign commerce, namely a mosque in Hancock, New York, in violation of 18 U.S.C. §§ 844(i) and 373. (Doc. 84.)

Defendant argues the evidence of intent as to Count Two was insufficient for the same reasons he initially advanced as to Count One: because he had no "plan" to burn down the building, he could not have intended to solicit anyone to commit arson and he could not have intended to damage or destroy the building. For the reasons explained with regard to Count One, the Court finds there was sufficient evidence to support the jury's determination of Defendant's intent on Count Two.

Defendant also argues the jurisdictional element of Count Two was not satisfied because the mosque was not actively involved in commerce. He argues the mosque's worship-related activities were insufficient; the annual summer camp that used the mosque for some of its activities was an operation of the community, rather than of the mosque; and Zavia Books, which operated out of the second floor of the mosque, was not owned or operated by the mosque, did not benefit the mosque financially, and did not sell its first book until after Defendant's arrest.

The Court finds the evidence regarding Zavia Books was sufficient to satisfy the interstate nexus for Count Two.[3] The arson statute applies to anyone who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, ***any building, vehicle, or other real or personal property*** used in interstate or foreign commerce or in any

---

[3] This being the case, the Court finds it unnecessary to consider the government's other grounds for jurisdiction, the connection of the mosque itself to interstate commerce and the operation of the summer camp in interstate commerce.

activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i) (emphasis added). Zavia Books was physically located on the second floor of the mosque building between February and April 2015, and it was purchasing office supplies, equipment, and materials in interstate commerce during this time. Contrary to Defendant's unexplained assertion, it is irrelevant that Zavia Books was a separate legal entity from the mosque. Unlike 18 U.S.C. § 247, 18 U.S.C. § 844(i) does not require that any particular characteristic be a but-for cause of a defendant's actions. The mosque and Zavia Books were both in the same building, and it was Defendant's solicitation of others to damage or destroy that building that is relevant to Count Two.

Defendant's lack of knowledge of the business's existence at the time of the offense is irrelevant. The prosecution only has to show a defendant knew the facts giving rise to federal jurisdiction if those facts are relevant to separating innocence from wrongful conduct. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72–73 (1994), *quoted in Houston*, 2017 WL 1097138, at *3. Such is not the case here. Taking the evidence in the light most favorable to the prosecution, the Court finds there was sufficient evidence for a reasonable jury to find the jurisdictional element of Count Two was satisfied.

### C.     Counts Three and Four: Communicating a Threat in Interstate Commerce

Counts Three and Four charged Defendant with willfully making a threat through a telephone and other instrument of interstate commerce to kill, injure, and intimidate any individual and unlawfully damage and destroy a building and other real and personal property, by means of fire and an explosive, in violation of 18 U.S.C. § 844(e), on March 22, 2015 and April 9, 2015, respectively. (Doc. 84.) Defendant argues the government did not present sufficient evidence to convict him on Counts Three and Four because there was no evidence he

made the communications in question for the purpose of achieving a goal through intimidation. (Doc. 186 at 2.)

A communication in interstate commerce can only violate 18 U.S.C. § 844(e) if it satisfies the legal definition of a "true threat." *See United States v. Williams*, 690 F.3d 1056, 1062 (8th Cir. 2012) (section 844(e) criminalizes true threats); *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (section 844(e) forbids only true threats, *i.e.* "a serious threat as distinguished from words as mere political argument, idle talk or jest"); *United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987) (considering whether defendant's statements constituted a "true threat"). That is, it must meet a narrower definition than the one applied to the term "threat" in common understanding.

A "true threat" must, among other things, be "conveyed to effect some change or achieve some goal through intimidation." *Alkhabaz*, 104 F.3d at 1496.[4] "Although it may offend our sensibilities, a communication objectively indicating a serious expression of an intention to inflict bodily harm cannot constitute a threat unless the communication also is conveyed for the purpose of furthering some goal through the use of intimidation." *Id.* at 1495. The Court of Appeals for the Sixth Circuit reiterated this requirement earlier this year: "A statement rises to the level of a 'true threat' when it amounts to 'a serious expression of an intention to inflict bodily harm' and is 'conveyed for the purpose of furthering some goal through the use of intimidation.'" *Houston*, 2017 WL 1097138, at *4 (quoting *Alkhabaz*, 104 F.3d at 1495).

---

[4] The Court discussed *Alkhabaz* and the legal requirements for a "true threat" in some detail in the course of rejecting Defendant's proposed plea agreement to an 18 U.S.C. § 875(c) threat charge in 2015. (Doc. 29.) Although the type of threat charged and the factual and procedural context are now different, the Court's previous discussion of true-threat law remains applicable and will not be repeated in detail here.

14

Thus, in *Alkhabaz*, the defendant's detailed and graphic discussion of sexual violence he wanted to inflict on other individuals—including one named individual in particular—was not a "true threat." *Alkhabaz*, 104 F.3d at 1496. The statements were made to a likeminded individual to foster a friendship based on a shared sexual fantasy, not to further a goal through intimidation.[5] In *Houston*, by contrast, the defendant's statements to his girlfriend about killing his attorney did constitute a "true threat." *Houston*, 2017 WL 1097138, at *5. The defendant was angry his attorney had foreclosed on an interest in the defendant's family's land. The defendant told his girlfriend on a phone call from jail—a call he made from a phone with a sticker saying calls could be monitored and recorded—that he would kill his attorney or have him killed, and that she should make his threats known in court and on the news. The defendant's words were a "true threat" because, in addition to being serious, he intended his words themselves to achieve a goal through intimidation: he wanted his words to intimidate the attorney into giving the property back to the defendant's family and to deter potential buyers who might be interested in the property. These two cases illustrate that it is not how reprehensible a statement is that determines whether it is a "true threat," but whether the speaker intended the words themselves to effect some change or achieve some goal through intimidation.

In the present case, the statements charged as threats in Counts Three and Four are the statements Defendant made during phone calls with William Tint on March 22, 2015 and April 9, 2015. (*See* Doc. 197 at 7.) Among other things, Defendant and Mr. Tint discussed getting a commitment from other supposed gunners to go to Islamberg to burn down its mosque, kitchen,

---

[5] The court in *Alkhabaz* also expressed skepticism as to the seriousness of the defendant's intent to carry out the actions he was discussing, which may account for the court's use of the term "fantasy." *See* 104 F.3d at 1496. This Court does not read *Alkhabaz* to require that a communication must be a fantasy in order to escape being a "true threat."

15

and school; methods, tactics, and equipment for doing so; being willing to kill if the people of Islamberg fired on them; and using a demolition specialist, whom they described as a "fireworks" specialist to conceal their meaning from any law enforcement personnel who might have been listening to the call.

The government points to ample evidence from which the jury could have concluded beyond a reasonable doubt that Defendant's statements to Mr. Tint were *serious* enough to be "true threats." (*Id.* at 7–10; Doc. 211 at 2–5.) But there was no evidence to support what is also required: that the words Defendant said to Mr. Tint were, *in and of themselves*, intended to further a goal through intimidation.[6] The government tries to gloss over this lack of evidence by describing Defendant's goal as intimidating his victims by committing, in the future, the firebombing and killing he was discussing on March 22 and April 9. (*Id.* at 9.) But to be a "true threat," it must be the words themselves that are intended to intimidate, not any actions that may grow out of the words. Talking about an action and then trying to intimidate someone by carrying out the action are not the same thing as trying to intimidate someone simply by talking about a planned action.

Viewing the evidence in the light most favorable to the prosecution, the evidence did not establish beyond a reasonable doubt that Defendant intended his words about violence to intimidate anyone. While reprehensible, the evidence instead indicated he was trying to obtain

---

[6] The deficiency of the government's evidence on Defendant's words being for the purpose of intimidation is apparent from its supplemental response regarding *Houston*. (*See* Doc. 211.) The government acknowledges the requirement stated in *Houston* that to be a "true threat" a statement must both (1) be a serious expression of an intent to inflict harm and (2) be conveyed for the purpose of furthering some goal through intimidation. (*Id.* at 5 (quoting *Houston*, 2017 WL 1097138, at *4).) The government devotes all of its argument, however, to the indicia of seriousness of Defendant's intention under *Houston*. (*Id.* at 2–5.) It undertakes no analysis of Defendant's alleged purpose of intimidation under *Houston*.

the help, affirmation, and commitment of someone he believed was sympathetic to his beliefs and his plans. There was no evidence he intended to intimidate Mr. Tint. There was no evidence he intended Mr. Tint to repeat or convey his words to the residents of Islamberg to intimidate them. There was no evidence he otherwise intended his words, as opposed to his discussed actions, to reach the residents of Islamberg at all. Finally, there was no evidence he intended his words to reach any person other than the residents of Islamberg for the purpose of intimidating those hearers. Defendant's words to Mr. Tint may have constituted other crimes—indeed, the jury found Defendant committed two different crimes of solicitation during the period in which the phone calls with Mr. Tint took place—but they do not satisfy all the requirements to be a "true threat" under 18 U.S.C. § 844(e).

Defendant's renewed motion for judgement of acquittal on Counts Three and Four will be **GRANTED**.

## IV. <u>CONCLUSION</u>

The Court concludes there was sufficient evidence to sustain Defendant's convictions on Counts One and Two of the Superseding Indictment, solicitation to commit a civil rights violation under 18 U.S.C. § 247(a)(1) and solicitation to commit arson of a building under 18 U.S.C. § 844(i). As to Counts Three and Four, making threats in interstate commerce on March 22 and April 9, 2015 in violation of 18 U.S.C. § 844(e), the Court concludes there was not enough evidence for the jury to have found beyond a reasonable doubt Defendant made threats on those dates for the purpose of effecting a change or achieving a goal through intimidation. *See Alkhabaz*, 104 F.3d at 1496; *see also Houston,* 2017 WL 1097138, at *4. Accordingly, the

renewed motion for judgment of acquittal (Doc. 185) will be **GRANTED IN PART** as to Counts Three and Four and **DENIED IN PART** as to Counts One and Two.

**An appropriate Order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**