UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 1:15-cr-39 |
| v. | ) |
| | ) Judge Collier |
| ROBERT R. DOGGART | ) Magistrate Judge Lee |

**MEMORANDUM & ORDER**

This matter is before the Court on an October 18, 2018 Opinion of the United States Court of Appeals for the Sixth Circuit, *United States v. Doggart*, 906 F.3d 506 (6th Cir. 2018) (the "Opinion"), in which the Court of Appeals reversed this Court's order (Doc. 29) rejecting Defendant's April 24, 2015 Plea Agreement (Doc. 14). (Doc. 305.) The Court of Appeals remanded the case for this Court to consider whether to accept the Plea Agreement under current law. The Court of Appeals did not enter a judgment, but rather retained jurisdiction over Defendant's other appellate arguments to resolve if Defendant's current convictions remain in place. (*Id.*)

I. **INTRODUCTION**

This Court held a hearing with counsel on February 27, 2019, to determine the appropriate course of action for the case in light of the Opinion. (Doc. 312.)

The Court of Appeals has instructed this Court to "reevaluate the plea agreement under the correct definition of a threat." *Doggart*, 906 F.3d at 512. Such an evaluation is necessary because, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3); *see also McCarthy v. United States*, 394 U.S. 459, 467

(1969). Concurring with the arguments both parties made in their pre-hearing briefs (Docs. 309, 311), and complying with the explicit findings of the Court of Appeals, the Court announced at the start of the hearing that the factual basis in the Plea Agreement satisfies the correct definition of a threat and therefore adequately supports a violation of 18 U.S.C. § 875(c). This finding means that Defendant's plea of guilty to the § 875(c) count in the April 24, 2015 Bill of Information (Doc. 12) should have been accepted when it was first tendered, and should likewise be accepted now.

The Court of Appeals further instructed this Court as follows: "If the court finds that Doggart intended to make a threat, it must allow him to accept the plea agreement." *Doggart*, 906 F.3d at 512. Having found at the hearing that Defendant intended to make a threat, the Court inquired of counsel as to how the Court should proceed with Defendant's tendering of a guilty plea to the § 875(c) charge, as well as whether the Court should accept the Plea Agreement.[1] Neither counsel was prepared to discuss these questions definitively during the hearing, so the Court allowed both sides to submit supplemental briefs.

On May 1, Defendant filed his Supplemental Brief in Support of the Plea Agreement. (Doc 314.) The Government filed its Supplemental Memorandum on the same day. (Doc 315.) On May 15, each party responded to the other's brief. (Docs. 316, 317.)

---

[1] It is not clear whether the Court of Appeals is referring to the Court or Defendant in saying that, "[i]f the court finds that Doggart intended to make a threat, it must allow ***him*** to accept the plea agreement." *Doggart*, 906 F.3d at 512 (emphasis added). Because the sentence starts with a reference to the Court and employs the pronoun "it" to refer to the Court, the more plausible reading is that "him" refers to Defendant. Defendants do not accept plea agreements, however; courts do. *See, e.g.*, Fed. R. Crim. P. 11(c)(3)–(5). The only sense in which a defendant may accept a plea agreement is by accepting an offer from the Government to enter into a plea agreement. Defendant already did that when he signed the Plea Agreement. The Court thus interprets the sentence about accepting the Plea Agreement to mean that Defendant should be allowed to tender a guilty plea to the charge addressed in the Plea Agreement and to try to persuade the Court to accept the Plea Agreement.

2

## II. PROCEDURE FOR TAKING DEFENDANT'S GUILTY PLEA

Before accepting a defendant's guilty plea, "the court must address the defendant personally in open court," informing him or her of certain rights, the nature of the charges, and certain possible consequences of the plea. Fed. R. Crim. P. 11(b)(1). The Court must also "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

During the February 27 hearing, the Court discussed with counsel whether it should follow its usual method of taking a guilty plea. The Court recounted for the benefit of counsel that, in the normal guilty-plea colloquy, it would inform a pleading defendant that the Court was not bound to accept a guilty plea, that the Court would order a presentence report, that the Court would defer acceptance or rejection of the plea agreement until after the presentence report had been prepared, and that if the Court decided to reject the plea agreement, the Court would inform the defendant of that decision in open court and provide the defendant with the opportunity to withdraw the guilty plea. Both counsel agreed that the normal procedure should be followed. Nothing in the Opinion suggests the Court should deviate from its normal practice for taking Defendant's guilty plea.

The Court will accordingly have Defendant brought to Court for the purpose of tendering a plea of guilty to the § 875(c) count in the original Bill of Information. This will put Defendant back in the position he was in in April 2015 and give him the benefit of the bargain he reached with the Government. The Court will walk Defendant through the standard colloquy for guilty pleas. The Court will have Defendant sworn. The Court will address Defendant regarding the charge and his understanding of the charge. The Court will discuss the Plea Agreement with Defendant. The Court will inquire whether defendant is guilty of the charge, understands the

3

charge, and is pleading guilty because he is guilty of the charge. The Court will also inform Defendant that the sentence ultimately imposed may be different from the sentence predicted by defense counsel or anticipated by Defendant.

The procedure the Court will follow for Defendant's guilty-plea colloquy will differ in two respects from the Court's typical procedure: in its discussion of the preparation of a presentence report, and in its discussion of acceptance or rejection of the Plea Agreement. The Court addresses these two subjects below. Because the nature of the Plea Agreement itself affects both subjects, the Court first addresses the construction of the Plea Agreement under Rule 11(c)(1) of the Federal Rules of Criminal Procedure.

### III. THE PLEA AGREEMENT IS A RULE 11(c)(1)(A) AGREEMENT

Rule 11(c)(1) of the Federal Rules of Criminal Procedure allows plea agreements to place certain restrictions on counsel for the Government. A plea agreement may "specify that an attorney for the government will . . . not bring, or will move to dismiss, other charges." Fed. R. Crim. P. 11(c)(1)(A). A plea agreement may also require an attorney for the Government to "recommend, or agree not to oppose the defendant's request," for the sentencing court to consider a specific sentence, range, or other factor, where the recommendation is not binding on the sentencing court. *Id.* at (c)(1)(B). Or a plea agreement may contain an agreement "that a specific sentence or sentencing range is an appropriate disposition, or that a particular provision . . ., policy statement, or sentencing factor does or does not apply," where the agreement is binding on the sentencing court "once the court accepts the plea agreement." *Id.* at (c)(1)(C). The inclusion of any of these types of provisions affects how a sentencing court is to treat the plea agreement. *See, e.g.*, *id.* at (c)(3) (describing actions a court may or must take with various types of plea agreements.)

4

The Opinion does not state that the Plea Agreement falls into any of the three categories of Rule 11(c)(1). The Opinion nevertheless dictates that the Plea Agreement must fall under Rule 11(c)(1)(A), because it construes the Plea Agreement as containing a commitment by the Government not to bring additional charges against Defendant. *See Doggart*, 906 F.3d at 512 (explaining Defendant suffered prejudice from Court's mistaken rejection of Plea Agreement, because rejection allowed the Government to bring other charges that resulted in higher sentence).

Both parties agree the Opinion is correct in reading the Plea Agreement as a Rule 11(c)(1)(A) agreement.[2] (Doc. 314 at 1–4, 6; Doc. 315 at 1–3.) The statement in the Plea Agreement that "[t]here will be no other counts to dismiss at the time of sentencing" provides further support for this conclusion (Doc. 14 ¶ 2), as does the provision that, if Defendant violated the agreement, the Government could prosecute Defendant for "any and all federal crimes that the defendant committed related to this case" (*id.* ¶ 11). Construed as a Rule 11(c)(1)(A) agreement, the Plea Agreement, if the Court accepts it, would preclude the Government from bringing the solicitation charges against Defendant that are now pending on appeal.

## IV. PREPARATION OF PRESENTENCE REPORT

During a typical guilty-plea colloquy, the Court informs the defendant that it will order the Probation Office to prepare a presentence report for the Court's use in determining the sentence. The Court informs the defendant that the Court generally is not in a position to determine the guideline sentence until after the presentence report has been prepared and the defendant, the

---

[2] While arguing that the Plea Agreement is a Rule 11(c)(1)(A) agreement, Defendant also contends it has features of a Rule 11(c)(1)(B) agreement. (Doc. 314 at 1–6.) Whether the Plea Agreement has features of an 11(c)(1)(B) agreement does not change that it is also an 11(c)(1)(A) agreement. Because this does not affect the Court's analysis, it will not be discussed further.

5

Case 1:15-cr-00039-CLC-SKL   Document 318   Filed 06/04/19   Page 5 of 13   PageID #: 5978

defendant's counsel, and the Government have had an opportunity to challenge the facts in the report.

In this case, the Court already has the benefit of a presentence report. In addition, the Court heard and saw the evidence at trial, including the testimony of witnesses and the testimony of victims regarding the impact of this criminal conduct. The Court therefore already possesses information on the magnitude of the offense and a great deal of information on the history, characteristics, and background of Defendant. Both sides agree that it is proper for the Court to consider this information and take it into account in sentencing Defendant. (Doc. 314 at 7–8; Doc. 315 at 4.) The Guidelines also counsel that, with a Rule 11(c)(1)(A) plea agreement, a sentencing court should consider information concerning dismissed or noncharged conduct: "[A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of §1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted." USSG § 6B1.2(a).

At Defendant's original sentencing hearing, the Court determined that a sentence of 235 months was necessary to fulfill the 18 U.S.C. § 3553 sentencing factors. The Court made that determination after thoughtfully and carefully considering the evidence presented at trial, the contents of the presentence report, and the arguments of counsel. Nothing has changed that compels the Court to reconsider that determination. The Court nevertheless recognizes that a violation of 18 U.S.C. § 875(c) carries a statutory maximum sentence of five years' imprisonment.

Because the Court already has the benefit of the presentence report and a full picture of Defendant's criminal conduct and his history, characteristics, and background, the Court sees little purpose to be served by requiring a full presentence report. The Court may, if the parties desire,

6

ask for an abbreviated presentence report containing just the new guideline calculations and an update on Defendant since his last sentencing. If Defendant desires, the Court is willing to set sentencing at a time different than the guilty plea to allow the preparation of such a report. On the other hand, since the Court will already have much of the information necessary for an informed sentencing decision, Defendant may wish to be sentenced on the date of the guilty plea. The Court will leave that up to Defendant.

V.   **ACCEPTANCE OR REJECTION OF THE PLEA AGREEMENT**

With an 11(c)(1)(A) plea agreement, "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). The Sentencing Guidelines' policy statement regarding acceptance of plea agreements provides as follows:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges (Rule 11(c)(1)(A)), the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

USSG § 6B1.2(a); *see also United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018) (court "must exercise 'sound judicial discretion' in determining whether to reject a plea") (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)); *United States v. Walker*, 922 F.3d 239, 250 (4th Cir. 2019) (court should consider whether plea agreement is too lenient or too harsh and whether it is in the public interest); *United States v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005) (no abuse of discretion where court rejected plea agreement as too lenient based on presentence report).

Given the Court's discussion in Section IV above, the Court is obviously not in a position to state that the single § 875(c) charge in the Bill of Information "adequately reflect[s] the seriousness of the actual offense behavior." USSG § 6B1.2(a). Nor can the Court state that accepting the Plea Agreement "will not undermine the statutory purposes of sentencing or the sentencing guidelines." *Id.* As explained above, the Plea Agreement is too lenient given the extensive, serious, and dangerous conduct reflected in the presentence report, and it is not in the public interest because it does not adequately promote respect for the law, deter criminal conduct, or protect the public from future crimes of Defendant. This means that the Court should reject the Plea Agreement.

Defendant argues it would be an abuse of the Court's discretion to reject the Plea Agreement. Defendant asserts that the Court of Appeals "telegraphed its view that a statutory maximum of five years is sufficient to serve § 3553(a) purposes." (Doc. 314 at 4.) Defendant also points to the fact that the Court never suggested it had any reason to reject the bargain before, that the Government initially supported the Plea Agreement strongly, and that the Government thought Defendant should remain on bond as reasons why rejection of the Plea Agreement would be an abuse of discretion. (*Id.*)

First, Defendant argues that the Opinion "implicitly denies [the Court] the discretion to reject the [plea] agreement on the ground that the statutory maximum under § 875(c) is insufficient." (Doc. 316 at 1.) Nothing in the Opinion says that. The focus of the Opinion was the correct definition of a threat and whether the factual basis within the Plea Agreement satisfied that definition, not on whether the sentence for an 18 U.S.C. § 875(c) violation was sufficient or insufficient. For the Court of Appeals to decide that a particular sentence was sufficient or insufficient at the plea agreement stage, and to ignore the other statutory and governing provisions,

8

would be a marked departure from the usual methodology of the Court of Appeals. Reaching such a conclusion would require this Court to presume that the Court of Appeals wished this Court to ignore or disregard other applicable statutes, rules, and governing provisions, without a clear statement that the Court of Appeals desired this Court to operate in such a manner. The Court reads the Opinion as dealing with the front end of the guilty-plea process, the acceptance of the plea prior to the preparation and review of the presentence report and the calculation of the Sentencing Guidelines, and not the back end of the process, acceptance of the plea agreement after the preparation and review of the presentence report and the calculation of the Sentencing Guidelines. It is only at the back end of the process that the Court can determine the magnitude of the criminal conduct and whether the plea agreement allows the Court to impose a sentence that complies with the § 3553(a) factors and the Sentencing Guidelines.

Defendant's other arguments do not persuade the Court that it should not follow USSG § 6B1.2(a). It is true the Court did not discuss the sufficiency of the potential sentence the first time it considered the Plea Agreement. The Court previously concluded that there was not a factual basis for Defendant's guilty plea and rejected the Plea Agreement for that reason. The Court did not reach the point of receiving a presentence report containing the full story of Defendant's criminal conduct. The Court never had occasion, until now, to weigh in on whether the statutory maximum for the § 875(c) count was sufficient under § 6B1.2(a). Next, that the Government was advocating acceptance of the Plea Agreement is not relevant, because the Government is always a party to a plea agreement. Section 6B1.2(a) must serve some purpose. If all it took to avoid it was that the Government was a party to the plea agreement, then § 6B1.2(a) would serve no purpose. Last, whether a defendant should be released on bond cannot be determinative of the appropriateness of a particular sentence. The Court's current concern regarding the danger

9

Defendant poses to society came through hearing the evidence at trial, the testimony of witnesses, recordings of Defendant speaking, the testimony of victims, and Defendant's allocution. None of this information was before the Court the first time the Court considered the Plea Agreement.

Defendant also argues he suffered real prejudice as a result of the Court's error in not allowing him to plead guilty:

> Specifically, that error caused Doggart to have to go to a trial on this charge. As a result, Doggart suffered an additional financial burden of employing counsel for a trial, as well as a substantial emotional burden of standing trial. Additionally, had the plea agreement been accepted, the Government may have, in its discretion, chosen not to bring additional charges against Doggart. All of this amounts to prejudice suffered and referred to by Judge Sutton.

(Doc. 314 at 6–7.) With the Court of Appeals having determined that the Plea Agreement is a Rule 11(c)(1)(A) agreement, and with this Court having determined that pursuant to § 6B1.2 it can accept Defendant's guilty plea but not the Plea Agreement, Defendant still might have suffered the additional burden of employing counsel for trial, as well as the substantial emotional burden of standing trial. Given what the Court has learned of the full extent of Defendant's criminal conduct, we cannot know whether the Government would have pursued additional charges if the Court had applied the correct definition of a threat in the first instance, and then gone on to consider the Plea Agreement under § 6B1.2, as it does now. We know that at present, the Government does wish to pursue additional charges.

Where a plea agreement has a defendant pleading guilty to a charge that does not adequately reflect the seriousness of the offense or undermines the statutory purpose of sentencing, the Court must, on the record and in open court:

(a) inform the parties that the court rejects the plea agreement;

(b) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

10

(c) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

USSG § 6B1.3 (quoting Fed. R. Crim. P. 11(c)(5)).

During a typical guilty-plea colloquy, the Court advises the defendant that it is not required to accept the plea agreement. The Court informs the defendant that it generally defers its decision to accept or reject the plea agreement until after receiving the presentence report. The Court also advises the defendant that if it decides to reject the plea agreement, the Court will inform the defendant of that decision, and the defendant at that time would have the opportunity to withdraw the plea of guilty.

Because the Court finds that it should reject the Plea Agreement, the Court will modify its typical guilty-plea colloquy, given the information the Court gained from the trial and the presentence report. The Court will instruct Defendant that the Court has already received and read the presentence report.[3] The Court will inform Defendant that pursuant to USSG § 6B1.2, it will reject the Plea Agreement for the reasons stated in that provision. The Court will give Defendant the opportunity to withdraw his guilty plea. The Court will advise Defendant that although the Court rejects the Plea Agreement, Defendant is free either to maintain his guilty plea without the plea agreement or to withdraw his guilty plea. The Court will advise Defendant that if he withdraws his guilty plea, then his case at the Court of Appeals will continue. *Doggart*, 906 F.3d at 512. ("If, on the other hand, Doggart ultimately decides not to plead guilty or the district court determines that Doggart did not intend his statement as a threat, Doggart's convictions will remain in place, and we will proceed with his appeal as to the remaining issues as well as any other

---

[3] Obviously, Defendant and the Government also know the evidence that was presented at trial, as well as the contents of the presentence report.

11

potential appeal.") The Court will advise Defendant that if he maintains his guilty plea, he will be sentenced based upon his 18 U.S.C. § 875(c) conviction.

The Court will also inform Defendant that if he maintains his guilty plea, he will be doing so outside of his Plea Agreement. That would mean the Government would be able to charge Defendant with any other crimes, including crimes arising out of related conduct. The Court will advise Defendant that the Court cannot predict what, if anything, the Court of Appeals would do with his remaining convictions. The Court of Appeals stated: "If he pleads guilty under the terms of the agreement and if no one challenges the plea, we will then vacate Doggart's other convictions." *Id.* Defendant would not be pleading guilty under the terms of the Plea Agreement, however, so whether that would mean the vacatur of Defendant's other convictions would be beyond the power of this Court to state. However, there would be a possibility that Defendant would receive a sentence of imprisonment on the § 875(c) charge, and that the Court of Appeals would affirm Defendant's conviction and sentence on the other charges, and Defendant could thus receive an even greater total sentence than is currently imposed on him. The Court would accordingly inform Defendant that if he did receive an increase in his sentence, or a sentence more severe than he expected, he would be bound by his plea of guilty, and would have no right to withdraw his plea of guilty. *See* Fed. R. Crim. P. 11(b)(H) (the Court must advise a defendant of possible maximum consequences of a guilty plea, even if the Court cannot predict that those consequences will actually occur).

## VI. CONCLUSION

The Court having determined the procedure it will use in complying with the decision of the Court of Appeals, the Court will leave it to the Government to take the appropriate action to

12

reinstate the Bill of Information. Once the Bill of Information is reinstated, the Court will schedule a time for a hearing and will have Defendant brought before it for the purpose of tendering a plea of guilty to the § 875(c) charge in the Bill of Information. If Defendant wishes to have his sentencing hearing conducted on the same day, he should so notify the Court.

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**