UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
At Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    No 1:15-cr-39
    Judge Collier/Lee

ROBERT R. DOGGART,

    Defendant.

## SUPPLEMENT TO MOTION FOR BOND PENDING RE-SENTENCING

Robert Doggart, by and through counsel, files this second supplement to his pending motion for bail pending resentencing pursuant to 18 U.S.C. § 3143. (Doc. 327.)

Since Mr. Doggart filed his motion on March 26, 2020, the reported number of infected BOP inmates has risen rapidly. As of April 2, 2020, seventy-five inmates are reported infected, *see* http://www.bop.gov/coronavirus/ (last visited Apr. 3, 2020), a rate reflecting a 750% increase in eight days. "At that rate of growth, every inmate in the BOP would be infected in just 4 weeks." Walter Pavlo, *Bureau of Prisons COVID-19 Outbreak Growth Could Overwhelm Agency*, Forbes (Mar. 30, 2020), https://tinyurl.com/qulpj4y. The just-cited article includes this graphic showing the trajectory up to March 30, which can only have continued its upward movement:



*Id.* As of today, *seven* inmates have died from complications from the virus, five at FCI Oakdale (Louisiana) and two at FCI Elkton (Ohio). *See* BOP Press Releases, https://www.bop.gov/resources/press_releases.jsp. At FCI Elkton, 3 additional inmates have tested positive for COVID-19, while another *80* inmates are showing symptoms. WKYC Studios, Rachel Polansky, *First inmate death related to coronavirus at eastern Ohio prison* (Apr. 2, 2020), https://tinyurl.com/ukf54kx.

Also since Mr. Doggart filed his motion, BOP has placed all its facilities on a 14-day lockdown, effective April 1, 2020. *See* BOP, *COVID-19 Action Plan: Phase V* (Mar. 30, 2020), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. This action was taken "[i]n response to a growing number of quarantine and isolation cases in our facilities, the BOP will take the following actions immediately to further mitigate the exposure and spread of COVID-19." *Id.* But this clearly has not stopped the spread of the virus, and likely will not.

In *United States v. Rodriguez*, No. 2:03-cr-00271-AB (E.D. Pa. Apr. 1, 2020) (Doc. 135), the court described prisons for what they are: "tinderboxes for infectious disease." *Id.* at 2. There, the court granted compassionate release for Jeremy Rodriguez even though he did not satisfy any of the grounds for compassionate release under U.S.S.G. § 1B1.13. *Id.* at 21. "For

2

Case 1:15-cr-00039-CLC-SKL    Document 328    Filed 04/03/20    Page 2 of 6    PageID #: 6049

Mr. Rodriguez," who has diabetes, high blood pressure, and liver abnormalities, "nothing could be more extraordinary and compelling than this pandemic." Perhaps most important, the court declined to accept the "[t]he government's assurances that the BOP's 'extraordinary actions' can protect inmates," saying they "ring hollow given that these measures have already failed to prevent transmission at the facility where Mr. Rodriguez is housed." *Id.* at 15. The court concluded that COVID-19 plus Rodriguez's risk factors combined to constitute an extraordinary and compelling reason for release. *Id.* at 21.

There have been numerous additional court orders releasing inmates under various forms of authority in light of the risk of COVID-19. *See, e.g.*, *United States v. Meekins*, Case No. 1:18-cr-222-APM (D.D.C. Mar. 31, 2020) (Doc 75) (post-plea, pre-sentence release order releasing defendant with three pending assault charges due to extraordinary danger COVID-19 poses to those in detention); *United States v. Davis*, No. 1:20-cr-9-ELH (D. Md. Mar. 30, 2020) (Doc. 21) (releasing defendant due to the "urgent priority" of decarceration, to protect both the defendant and the community, and to preserve Sixth Amendment rights in this perilous time); *United States v. Marin*, No. 15-cr-252 (E.D.N.Y. Mar. 30, 2020) (Doc. 1326) (granting compassionate release "for the reasons stated in his motion, including his advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Muniz*, Case No. 4:09-cr-199 (S.D. Tex. Mar. 30, 2020) (Doc. 578) (releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly

3

vulnerable to infection."); *Fraihat v. Wolf*, No. 20-CV-590 (C.D. Cal. Mar. 30, 2020) (noting risk of asymptomatic spread and unsafe conditions in immigration detention mean "[t]he balance of equities tip sharply in [Fraihat's] favor" and thus ordering release); *United States v. Bolston*, Case No. 1:18-cr-382-MLB (N.D. Ga. Mar. 30, 2020) (Doc. 20) (releasing defendant in part because "the danger inherent in his continued incarceration at the R.A. Deyton Detention Facility . . . during the COVID-19 outbreak justif[y] his immediate release from custody"); *United States v. Hector*, Case No. 2:18-cr-3-002 (W.D. Va. Mar. 27, 2020) (Doc. 748) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19 to those in prison).

These are not all of them, as they keep coming daily. But for now, the judge's order in *Fraihait* is of particular interest, as it recognizes the crucial fact that many who are infected with the virus are *asymptomatic*. Order at 4, *Fraihait v. Wolf*, No. 20-CV-590 (C.D. Cal. Mar. 30, 2020). As the judge there explained, "[t]his is an unprecedented time in our nation's history, filled with uncertainty, fear, and anxiety. But in the time of a crisis, our response to those at particularly high risk must be with compassion and not apathy. The Government cannot act with a callous disregard for the safety of our fellow human beings." *Id.* at 12. While *Fraihait* involves the release of a civil detainee held for immigration reasons, the court noted the constitutional requirements imposed on the government for criminal detainees as well: "When the Government takes a person into custody and detains him against his will, the Constitution imposes upon the Government a duty to assume responsibility for that detainee's safety and general well being." *Id.* at 7 (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "Under the Eighth Amendment, the Government must provide criminal detainees with basic human needs, including reasonable safety." *Id.* (citing *Helling*, 509 U.S. at 32)). The Government violates the Eighth Amendment if

4

it confines a criminal detainee in unsafe conditions." *Id.* (citing *Helling*, 509 U.S. at 33). "Moreover, the Government may not 'ignore a condition of confinement that is sure or very likely to cause serious illness.'" *Id.* (quoting *Helling*, 509 U.S. at 32).

Most crucially, courts are recognizing that the risk of COVID-19 to a health-compromised inmate can change the calculus when release had been previously denied. *United States v. McLean*, No. 19-cr-380 (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release.").

The calculus in Mr. Doggart's case should likewise change. Whatever sentence this Court ultimately imposes upon resentencing, it certainly will not be a death sentence. Yet, the current pandemic creates a real risk of death for elderly and ill inmates like Mr. Doggart. The current BOP lockdown does not prevent him from being in contact with staff, who are free to come and go and are also becoming infected at a quickening rate and may be *asymptomatic*.

Mr. Doggart has a home to return to and has family that can transport him to that home. This Court can impose the strictest conditions of home confinement on him which would require him to stay in his house at all times except for medical treatment as the court allows. This condition would allow Mr. Doggart to be confined in a safe environment pending sentencing.

In short, the real risk to Mr. Doggart's safety by his continued detention, support his immediate release on bond.

5

Case 1:15-cr-00039-CLC-SKL   Document 328   Filed 04/03/20   Page 5 of 6   PageID #: 6052

Respectfully submitted this 3d day of April, 2020.

           FEDERAL DEFENDER SERVICES OF
            EASTERN TENNESSEE, INC.

           By: */s/ Myrlene R. Marsa*
           Myrlene R. Marsa
           Assistant Federal Defender
           835 Georgia Avenue, Suite 600
           Chattanooga, Tennessee 37402
           Myrlene_Marsa@fd.org
           (423) 756-4349
           BPR # 016798

           By: */s/ Jennifer Niles Coffin*
           Jennifer Niles Coffin
           Assistant Federal Defender
           800 South Gay St., Suite 2400
           Knoxville, Tennessee 37929
           Jennifer_coffin@fd.org
           (615) 736-5047
           BPR # 020703