# -UNITED STATES DISTRICT COURT
# EASTERN DISTRICT of TENNESSEE
# at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:15-cr-39 |
| v. ) | Judge Collier |
| ) | Magistrate Judge Lee |
| ROBERT R. DOGGART ) | |

## RESPONSE TO THE DEFENDANT'S MOTION FOR BOND PENDING RE-SENTENCING

COMES NOW the United States of America by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Perry H. Piper, Assistant United States Attorney, and Saeed A. Mody, Trial Attorney, and hereby responds in opposition to the defendant's motion for release pending re-sentencing. The defendant filed a motion for bond pending re-sentencing on March 26, 2020. (R. 327.) On April 3, the defendant filed a supplement to his motion for bond. (R. 328.) The defendant premises his motion for release on two basic grounds: 1) the defendant has served most of his time were he to be sentenced at the low end of the guideline range with an assumption that his guideline range is 51-63 months; and 2) "in light of his extreme risk for serious or fatal complications should he contract COVID-19, there are exceptional circumstances that support his release on bond pending re-sentencing." (R. 327, PageID# 6015-16.)

*Procedural Posture*

The defendant was named in a four count superseding indictment charging two counts of solicitation, one under 18 U.S.C. § 247 (civil rights), the other under 18 U.S.C. § 844(i) (arson). The defendant was also charged with two counts of making threats under 18 U.S.C. § 844(e). The Court dismissed the latter two counts after trial upon motion of the defendant. After the jury

1

convicted the defendant, the Court revoked the defendant's bond and ordered him into custody. In doing so, the Court noted

> Section 3143(a)(2) provides that "the judicial officer shall order that a person who has been found guilty of an offense which is a crime of violence and is awaiting imposition or execution of sentence be detained unless (1) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted, or an attorney for the government has recommended that no sentence of imprisonment be imposed on the person, and the judicial officer finds by clear and convincing evidence that the person is unlikely to flee or pose a danger to any other person or the community."

Transcript, Document 292, PageID # 5329.

The Court then noted that the defendant had "an obsession, if not a delusional interest," in Islamberg, and that it "was a fixation that veers towards the irrational." *Id*. at 5331. "From the Court's hearing of the evidence in this case, it strikes the Court that there was no apparent room on his part either for correction of his thoughts or any contradiction of his thoughts. He was fixated." *Id*. The Court also noted that the defendant had shown or offered no remorse, nor did he have any "understanding of the fear that his words and actions occasioned." *Id*. The defendant, as the Court noted, was willing to "lay down his life" in taking his actions against the residents of Islamberg. *Id*. at 5331-32. Considering "his age and considering the sentence that he might face," the Court stated, "it is possible that while he's out on bond might be the last chance he will have to act on his belief that he is fulfilling his patriotic duty." After examining these issues, the Court determined that the defendant was a danger to other persons and the community, and ordered his detention pending sentencing. *Id*. at 5332.

At the sentencing hearing, the Court entertained the argument of the parties on a variety of issues. One of the arguments offered by defense counsel, in an attempt to mitigate any potential

2

danger from the defendant, was that the defendant suffered from a narcissistic personality disorder. (R. 293, PageID# 5381.) Defense counsel read the definition of the disorder:

> According to the DSM-V, narcissistic personality disorder is a pervasive pattern of grandiosity, need for admiration, and lack of empathy. Features of this disorder include having a strong sense of self-importance, expecting to be recognized as superior. Further, individuals believe they are unique and can only be understood by, or should associate with, other special or high status individuals. Additional criteria include having a sense of entitlement and showing arrogant behaviors or attitudes.

(*Id*. at 5382.)

The Court, after hearing argument, found that the cross-reference under § 3A1.4 of the Guideline applied (relating to terrorism), and determined that the defendant's advisory guideline range was 235-293 months, limited by the statutory maximum of 240 months. After the defendant's lengthy allocution, the Court addressed the defendant, also at length. Ultimately, the Court noted that the defendant was "a person who has discarded almost everything sacred and important about our American legal system. You don't trust it. You don't believe in it. You have no reason to believe it. You have no reason to honor it or obey it." (*Id*. at 5539.) The Court reiterated that the defendant was a person who would "lay down [his] life" to "stand up for [his] convictions." (*Id*. at 5541-42.) The Court then noted, after hearing the defendant's allocution, that it reinforce[d] the Court's concern and heighten[ed] the Court's concern" that the defendant was "a distinct danger and threat to the citizens of the United States of America." (*Id*. at 5542.) The Court then imposed a sentence of 235 months, which was the bottom of the defendant's advisory guideline range.

The case went to the United States Court of Appeals for the Sixth Circuit, originally on the issue of whether the Court erred in declining to accept a plea to a Bill of Information charging one count of making threats in interstate commerce under 18 U.S.C. 875. The Sixth Circuit agreed

3

with the defendant, reversed and remanded. On remand, the Court informed the defendant that the Court would accept the defendant's plea but reject the plea agreement. The defendant declined that opportunity and appealed again. On appeal the second time, the Sixth Circuit upheld the Court's decision to reject the plea agreement, but found that the facts did not support a conviction for the solicitation to commit arson in violation of 18 U.S.C. §§ 844(i) and 373.

The defendant now stands convicted of one count of solicitation to commit a civil rights offense under 18 U.S.C. §§ 247 and 373. The statutory maximum for this offense is 10 years.

*Law and Argument*

Title 18 U.S.C. § 3143(a) addresses the issue of whether to detain or release a defendant pending sentencing if he or she has been found guilty of one of several enumerated offenses. Based on the defendant's conviction, which is a crime of violence with a statutory maximum of ten years or more, his detention is mandatory pursuant to 18 U.S.C. § 3143(a)(2). See, *United States v. Doggart*, 947 F.3d 879, 887 (6th Cir. 2020). Under such circumstances the relevant statutory provision requires that he *shall* be detained pending the sentencing hearing unless-

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a) (emphasis added).

Under the language of the statute, the Court need not address the issues of risk of flight or dangerousness unless the defendant is able to meet one of the two conditions contained in subsection (A)(i) or (A)(ii). Nevertheless, a defendant who is subject to detention under Section 3143(a)(2) who establishes: (1) by clear and convincing evidence that he is not likely to flee or

4

pose a danger to the safety of any other person or the community if released; and (2) that there are exceptional circumstances why detention is not appropriate, may still be released. 18 U.S.C. § 3145(c); *see also United States v. Christman*, 596 F.3d 870 (6th Cir. 2010). The burden is on the defendant to satisfy both of these thresholds, and it is a heavy burden that he carries. *See, e.g., United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) ("We have held that the Bail Reform Act is constitutional in respect to casting a burden upon defendants to justify release on bail following conviction."); *United States v. Parker*, No. 1:10-cr-28, 2011 WL 672309, at *1 (E.D. Tenn. Feb. 18, 2011) ("Before a court may even consider whether exceptional reasons are present, the defendant must show by clear and convincing evidence that he is not likely to flee or pose a danger to the community.").

First, it is not "substantially like[ly] that a motion for acquittal or new trial will be granted," 18 U.S.C. § 3143(a)(2)(A)(i), as this case has already been through a second round of appeals.

Secondly, the "Government [is not] recommend[ing] that no sentence of imprisonment be imposed." 18 U.S.C. § 3143(a)(2)(A)(ii). The defendant has suggested that he has served approximately 40 months of his sentence. (R. 327, PageID# 6015.) The government takes no exception to this assertion by the defendant (the defendant has been in prison for roughly three years, he was also evaluated at a Federal Medical Center prior to the trial in this case). The defendant also suggests that his new advisory guideline range will be 51-63 months. The government does not agree with this assertion. Under § 3A1.4 of the U.S.S.G., the cross-reference to terrorism will still apply. That section states

> "(a)    If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32…." and increase the Criminal History Category to VI.

The defendant's actions were a "felony" that at the very least intended to promote a federal crime of terrorism. During one of the intercepted conversations, the defendant stated

> "We either hit New York a week beforehand, okay, it could mess with them. They'll have to move their assets, okay, they'll have to move some of their assets, and it will disrupt their plans in Texas and Utah. Then they might even -- you know, might even call it off, or we could wait, and as soon as the Texas and Utah event occurs, that's the time to hit Islamberg, right then, that exact same day, a few hours after it starts in Texas."

(R. 293, PageID# 5402.)

The defendant also stated "What that's going to do is, if they pull that thing off in Texas, we'll stick something up in New York state." (*Id.* at 5403.) The "they" the defendant was referencing was the federal government and its alleged operation to impose martial law in April 2015. The defendant engaged in numerous other conversations revealing that he intended to disrupt the federal government. (See, *id.* at 5403-07.)

After listening to witnesses at the sentencing and then entertaining lengthy argument from the defendant's counsel, the Court ruled on the § 3A1.4 issue. (*Id.* at 5448-52.) The Court noted, "a defendant need not be convicted of a listed crime of terrorism for this enhancement to be appropriate. He, instead, may have intended the crime of conviction, or relevant conduct, to promote a terrorism crime." (*Id.* at 5449-50.) The defendant's "solicitation of others to damage or destroy the mosque at Islamberg using explosives intended to promote the federal terrorism crime of arson for the purpose of intimidating or coercing the government." (*Id.* at 5449-50.) Even though the Court found that the enhancement applied to the conviction in Count Two, which has now been vacated by the Sixth Circuit, the enhancement would also apply to the Civil Rights conviction in Count One. The language of the enhancement is broad and inclusive: "If the offense is a felony that involved, or was intended to promote" terrorism, then the enhancement should apply. § 3A1.4(a). The government will offer more argument regarding this issue, including the

6

government's suggested road map on how the Civil Rights conviction should also be a predicate for the enhancement, even though § 247 is not specifically enumerated (§ 844(i) is specifically enumerated as a predicate conviction for the enhancement).

Additionally, even if the Court should find that § 247 does not qualify as a predicate conviction for the terrorism enhancement under § 3A1.4(a), the guideline provides for another avenue of enhancement in Application Note 4. That Note states:

> Upward Departure Provision.—By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline applies only to federal crimes of terrorism. However, there may be cases in which (A) the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B); or (B) the offense involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. In such cases an upward departure *would* be warranted, except that the sentence resulting from such a departure may not exceed the top of the guideline range that would have resulted if the adjustment under this guideline had been applied.

U.S.S.G. § 3A1.4, Application Note 4 (emphasis added). The government suggests under the count of conviction, solicitation to commit a Civil Rights violation in Count One, an upward departure is warranted. Accordingly, even if the defendant's calculation is correct that his advisory guideline range would be 51-63 months, the government suggests an upward departure from that range would be appropriate. The actions the defendant solicited were the same as the actions solicited under § 844(i), the only subtle variation is the interstate commerce element. At re-sentencing, it is quite likely that the government will seek a sentence at or near the statutory maximum of 120 months.

7

In his motion, the defendant also suggests that

> …since his incarceration he has suffered serious medical problems, including a heart attack and that based upon the poor state of his health there is now clear and convincing evidence that he is not a risk of flight or a danger to the community. Further, in light of his extreme risk for serious or fatal complications should he contract COVID-19, there are exceptional circumstances that support his release on bond pending re-sentencing.

(R. 327, PageID# 6016.) The Court must make this decision after hearing the arguments.

The defendant was older and allegedly in poor health when this investigation began. It did not deter him. In fact, the defendant (in an intercepted call) revealed his bravado by stating "We blow up the three buildings, we kill a few of them, or all of them, and all of us die. Now, everybody dies anyway eventually. There's a clock on all of us. And it gets reported accurately." (R. 289, PageID# 5087.) In this passage, the defendant is suggesting that time is running out, and of course, the older the defendant gets (and it applies to all of us), the less time he has. The defendant frequently stated on the intercepted calls that he had been brought back from death numerous times. If the defendant truly believes he has little time left, then the defendant's advancing age makes him more dangerous, not less.

With respect to the defendant's health conditions, the government urges the Court to consider this factor. As noted, the defendant was allegedly in failing health during the pendency of the investigation. However, his health conditions, including his age, did not prevent him from soliciting others to commit heinous crimes. The defendant's primary weapon was his power of persuasion, based upon his ability to watch cable news and surf the internet. Those skills have not diminished with age.

Defendant also seeks temporary release from custody due to health concerns that heighten his risk of serious illness because of the COVID-19 pandemic. Specifically, the defendant states that he suffers from "heart and coronary artery disease, hypertension, and chronic kidney disease."

8

(R. 327, PageID# 6017.) Certainly, "some courts have determined that the heightened threat posed by COVID-19 to an inmate with a documented risk factor in a detention facility with confirmed cases of COVID-19 presents a 'unique combination of circumstances' that meets the exceptional circumstances requirement." *United States v. Felix*, Case No. 5:19CR711, 2020 WL 1677494, at *2 (N.D. Ohio April 6, 2020) (citing *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *3 (S.D.N.Y. Mar. 30, 2020)).

However, as of April 15, 2020, per the United States Marshals Service, there are no known cases of the coronavirus at the Hamilton County Jail. The Hamilton County jail is currently housing 290 inmates, of which 93 are federal inmates. Obviously, there could be as of yet undetected cases, but the Hamilton County jail is taking precautions to minimize the risk to the inmates. New inmates are screened before entering the facility. The facility is regularly cleaned with bleach. Inmates cannot have access to bleach or alcohol but are given access to a germicidal cleaning agent. If inmates exhibit indications of the virus, they are held in a separate cell and tested.

The United States seeks to ensure the defendant is safe, and is sympathetic to the defendant's argument. The defendant is in a class of individuals, an elderly individual with medical conditions, who is more at risk from Covid-19. But the defendant has not demonstrated that, at this time, his situation at the Hamilton County Jail presents an unmanageable risk. The defendant has demonstrated in the past, however, that he is a risk to others when he is out of custody.

9

Case 1:15-cr-00039-CLC-SKL   Document 331   Filed 04/22/20   Page 9 of 10   PageID #: 6065

*Conclusion*

Based on the foregoing reasons, the United States respectfully requests that the Court should deny the defendant's motion for bond pending re-sentencing.

Respectfully submitted,

J. DOUGLAS OVERBEY
United States Attorney

By:    *s/Perry H. Piper*
Perry H. Piper, BPR #013384
Assistant U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
Perry.Piper@usdoj.gov

By:    *s/*Saeed A. Mody, NY Bar #4368080
Trial Attorney
Civil Rights Division